**CONTINENTAL SERVICE LIFE & HEALTH INSURANCE COMPANY**

v.

**A.G. EDWARDS & SONS, INC.**

**Civ. A. No. 85–133–B.**

United States District Court, M.D. Louisiana.

June 11, 1987.

Charles R. Moore, Moore & Walters, Baton Rouge, La., for plaintiff.

Frederick R. Tulley, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendant.

POLOZOLA, District Judge.

Continental Service Life & Health Insurance Company ("Continental") was, until its liquidation in 1985, a Louisiana insurance company which sold health and life insurance. Continental filed this action against A.G. Edwards & Sons, Inc. ("AGE") alleging violations of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C. § 1961 et seq, the Securities Act of 1933, 15 U.S.C. § 77q, and 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Plaintiff further alleges breach of fiduciary duty and negligence under Louisiana law.

This matter is now before the court on the motion of the defendant to compel arbi-

tration, for a stay of these proceedings pending arbitration and to dismiss the RICO claim. The court finds that the parties are required to arbitrate the claims under the Exchange Act of 1934, the RICO claim and the state law claims under the "Security Cash Account" agreement entered into between the parties. The plaintiff is not required to arbitrate the claims brought under the Securities Act of 1933. This case shall be stayed as to the 1934 Exchange Act, RICO and state law claims.

The United States Arbitration Act, 9 U.S.C. §§ 1–14, provides that written provisions to arbitrate controversies in any contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the Act also requires the court to stay proceedings where the court is satisfied that the issue before it is arbitrable under the agreement. Under Section 4 the federal court is directed to order the parties to proceed to arbitration if there has been a failure, neglect or refusal of a party to honor an agreement to arbitrate.

In determining whether the court must order arbitration under the Act in this case the court must determine the following: (1) whether the parties agreed to arbitrate, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); (2) whether Congress intended that the federal statutory claims be nonarbitrable, *Shearson/American Express Inc. v. McMahon*, — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi, supra*, 105 S.Ct. at 3355; *Mayaja, Inc. v. Bodkin*, 803 F.2d 157 (5th Cir.1986); and, (3) if the court concludes that some, but not all of the claims in the case are arbitrable, the court must determine whether to stay the balance of the proceedings pending arbitration of the arbitrable claims.

■ The plaintiff contends that there is no valid agreement upon which arbitration can be based. Where the validity of the existence of a contract containing an alleged arbitration clause is put at issue, a trial on the merits is required before a party to a lawsuit can be ordered to arbitrate. 9 U.S.C. § 4; *T & R Enterprises, Inc. v. Continental Grain Co.*, 613 F.2d 1272 (5th Cir.1980). Therefore, this court ordered that an evidentiary hearing be held to determine the validity of the arbitration provision. Upon joint motion and stipulation of the parties, the parties agreed that the issue of the validity of the arbitration provision would be decided by this court on the depositions and exhibits filed by the parties with the court.

## I. The Agreement to Arbitrate

■ The first issue the court must determine is whether there is an agreement to arbitrate between the parties. The arbitration clause is separable as a matter of law from the other provisions of the contract. *Prima Paint Corp. v. Flood and Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

It is undisputed that John Levy contacted Irving Lindberg, an employee of AGE, to facilitate the sale of Continental's securities portfolio. At the time, Levy was a stockholder, but was not an officer or director of Continental. Lindberg executed the sale of the bonds after the documents were signed by Levy, as agent of Continental, and Harry G. Caire, as the assistant secretary of Continental. These documents were entitled "Corporation Account-Cash (Security Cash Accounts only-full authority)" and "Resolution (Association or other non-corporate organization)".

Among the provisions set forth in the "Corporation Account-Cash" agreement was an arbitration clause which provides as follows:

"FIFTH" That any controversy between this Corporation and the Broker or any of the Broker's officers, directors, agents, or employees, arising out of any agreement with the Broker, or any account with the Broker or any transaction by this Corporation with or through the Broker or any other cause whatsoever, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, the National Associa-

tion of Securities Dealers, Inc., or such securities exchanged as this Corporation may elect. If this Corporation fails to notify Broker of such election in writing within five days after receipt from the Broker of a request for arbitration, then the Broker may make such election on behalf of this Corporation. At least one of the arbitrators appointed to hear any controversy to be settled by arbitration shall be employed in the securities industry, unless otherwise agreed to prior to the time of the arbitration. The award of any arbitrators appointed pursuant hereto shall be final and judgment upon the award rendered may be entered in any court having jurisdiction. Provisions of this Paragraph are applicable to commodity accounts only if agreed to by this Corporation in a separate endorsement. This Paragraph shall not apply to any controversy involving a nonspurious claim under federal securities laws."

The defendant contends that Levy had the actual authority to open the cash account and to bind the plaintiff to the terms and conditions of the cash account agreement. AGE further contends that Levy had been given both written authority, in the form of a corporate resolution signed by Caire, and verbal authority which consisted of statements made by members of the Executive Committee of the Board of Directors of Continental.

Continental argues that the resolution was irregular on its face and contained several spaces which were noticably incomplete. Plaintiff also contends that there was no resolution authorizing Levy to act on behalf of Continental. To support this contention, plaintiff relies on the deposition and affidavit of Arthur Maxey, Secretary of Continental, which plaintiff argues clearly establishes that no resolution of the Board had been passed at that time authorizing Levy to act as agent of Continental to establish an account with AGE.

■ An agent is one who acts for or in the place of another by authority from the latter. La.Civ.Code art. 2985. Defendant argues that an agency relationship can be created by oral agreement, relying on La. Civ.Code art. 2992. However, the defendant has failed to note that La.Civ.Code art. 2997 provides that an express mandate is required to refer a matter to arbitration.[1] Therefore, Levy's reliance upon statements made by other members of the Board was misplaced.

The court also finds that authority to enter the agreement was not derived from the September 28, 1983 resolution which authorized the executive committee to conduct the company's affairs between Board meetings. The deposition testimony of Arthur Maxey indicates that the Executive Committee did not in fact meet to authorize the opening of the account with AGE or the sale of the bonds.

■ The court finds, however, that although Levy was without initial authority to sign the agreements containing the arbitration clause, it is clear that by the resolution dated February 23, 1984, the Board of Directors of Continental expressly ratified his actions. Ratification amounts to a substitute for prior authority, and a ratification which is retroactive to the date of the ratified obligation creates actual authority. *LeDoux v. Old Republic Life Insurance Co.*, 233 So.2d 731 (La.App. 3rd Cir.1970).

■ Plaintiff argues that the sale of the bonds was an illegal act and, therefore, cannot be ratified. Plaintiff relies on *Acadian Prod. Corp. of Louisiana v. Savanna Corp.*, 222 La. 617, 63 So.2d 141, (1953). However, it is not necessary for this court to decide whether the sale of the bonds was an ultra vires or illegal act. Under *Prima Paint Corp., supra,* 388 U.S. at 406, 87 S.Ct. at 1807, the bond sale must be separated from the opening of the account because it is the account agreement and not the sale of the bonds which contains the arbitration clause. It was not unlawful to open an account with AGE. In fact, the

**1.** See also, *Landis Construction Company, Inc. v. Health Education Authority,* 367 So.2d 330 (La. 1979) wherein the Louisiana Supreme Court held that express authority was required to enter a contract which contains an arbitration clause.

account remained open after the sale of bonds, with the funds from the sale being held by order of the Commissioner of Insurance for the State of Louisiana.

In summary, the court finds that the agreement with AGE to open an account, which contains an arbitration clause, was expressly ratified by Continental Board resolution of February 23, 1984. It is also clear from the language of the resolution itself and from the deposition of Arthur Maxey that the resolution was aimed at the ratification of the sale of bonds by Levy and the opening of the account with AGE. Therefore, the court finds that Continental agreed to arbitrate any controversy arising out of the agreement with AGE.

## II. Scope of Arbitration Agreement

Having determined that there was an arbitration agreement and the applicability of the Arbitration Act to these proceedings, the court must now determine which claims it must refer to arbitration under the agreement. The court must note that the parties have agreed in the arbitration clause found in the Security Cash Account agreement to arbitrate all of the claims which have been asserted by plaintiff in its complaint. However, the court must determine which claims are nonarbitrable even though the parties have agreed to arbitrate them.

### a. State Law Claims

■ It is clear that the Federal Arbitration Act requires this court to compel arbitration of the state law claims and to stay these proceedings on those claims pending arbitration. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Cummings v. A.G. Edwards & Sons, Inc.,* 637 F.Supp. 132, 133 (M.D.La.1986).

### b. RICO Claim

■ The Supreme Court in *Shearson/American Express Inc. v. McMahon, supra,* has recently ruled in a case similar to that before this court, that RICO claims are arbitrable. Therefore, the court finds that the plaintiff's RICO claim must be submitted to arbitration under the Federal Arbitration Act. Defendant's motion to dismiss the RICO claim will be stayed pending arbitration of this claim.

### c. Federal Securities Claims

■ Although the complaint is not clear, plaintiff appears to have alleged a claim in paragraph 3 of the complaint under the Securities Act of 1933, specifically 15 U.S.C. § 77q. The plaintiff also appears to allege a claim under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

Although the underlying rationale of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) has been questioned, the Supreme Court in *Shearson/American Express Inc. v. McMahon, supra,* stated:

> While stare decises concerns may counsel against upsetting *Wilko's* contrary reasoning under the Securities Act, we refuse to extend *Wilko's* reasoning to the Exchange Act in light of these intervening regulatory developments.

*Id.*

Therefore, the court holds that plaintiff's 1933 Securities Act claim is not arbitrable. The court further finds that the claim asserted under the Securities Exchange Act of 1934 shall be referred to arbitration. *Shearson/American Express Inc. v. McMahon, supra.*

## III. Stay Pending Arbitration

■ In *Cummings v. A.G. Edwards & Sons, Inc., supra,* 637 F.Supp. at 133, this court recently refused to stay federal securities claims pending the outcome of arbitration of state law claims based on similar factual allegations. Although *Cummings* did not involve arbitrable RICO claims, this court finds its rationale to be applicable to this case. The Fifth Circuit in *Girard v. Drexel Burnham Lambert, Inc.,* 805 F.2d 607 (5th Cir.1986) affirmed a similar ruling in which an arbitrable RICO claim was asserted. Therefore, defendant's motion to stay the nonarbitrable 1933 Securities Act claim pending the outcome of arbitration is denied.

Therefore:

**1002**

IT IS ORDERED that defendant's motion to compel arbitration of plaintiff's state law claims, RICO claim and claim asserted under the Securities Exchange Act of 1934 be and it is hereby GRANTED. Defendant's motion is DENIED as to plaintiff's claim under the Securities Act of 1933.

IT IS FURTHER ORDERED that defendant's motion to stay these proceedings as to the plaintiff's state law, 1934 Exchange Act and RICO claim be and it is hereby GRANTED. Defendant's motion to stay is DENIED as to plaintiff's claim under the Securities Act of 1933.

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's RICO claim is STAYED pending arbitration.