Lynn D. KETCHUM, Plaintiff,

v.

ALMAHURST BLOODSTOCK IV, et al., Defendants.

Lynn D. KETCHUM, Plaintiff,

v.

SPENDTHRIFT THOROUGHBRED BREEDING NO. 1, et al., Defendants.

Lynn D. KETCHUM, Plaintiff,

v.

PRUDENTIAL–BACHE SECURITIES, INC., et al., Defendants.

Civ. A. Nos. 86–2498, 86–2523 and 86–2535.

United States District Court, · D. Kansas.

Feb. 12, 1988.

Theodore C. Beckett, Don R. Lolli, Emmett J. McMahon, Beckett & Steinkamp, Kansas City, Mo., Charles C. Rankin, Lawrence, Kan., for plaintiff.

William G. Beck, Field, Gentry, Benjamin & Robertson, P.C., Kansas City, Mo., Robert P. Numrich, Field, Gentry, Benjamin & Robertson, P.C., Overland Park, Kan., Laurence R. Tucker, Morris, Larson, King & Stamper, Kansas City, Mo., William M. Modrcin, Overland Park, Kan., Jerome T. Wolf, Sandra L. Schermerhorn, Spencer, Fane, Britt & Browne, Kansas City, Mo., J. Nick Badgerow, Overland Park, Kan., for defendants.

Patrick Keel, pro se.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

These consolidated cases arose from various securities transactions between plaintiff and the eight named defendants. Plaintiff's claims against various defendants include violations of section 12(2) of the 1933 Securities Act, violations of section 10(b) and rule 10b–5 of the 1934 Securities Exchange Act, violations of Kansas Securities laws, misrepresentation, concealment, breach of fiduciary duty, and breach of contract. Additionally, plaintiff seeks an accounting from two defendants, rescission of certain contracts, and damages. This matter is now before the court on defendant Prudential–Bache Securities' motion to compel arbitration, for stay of proceeding, and for a protective order.[1] The court has determined that oral argument

---

1. Defendant Prudential Bache Agriculture, Inc., also made the same motion. However, this defendant is not a party to the arbitration agreement and states no authority for its being able to compel arbitration. Although we conclude later in this opinion that Prudential–Bache Agriculture can participate in the arbitration process, *see infra*, pp. 793–95, we can find no authority for allowing this defendant, as an affiliate of Prudential–Bache Securities, Inc., to compel arbitration (*i.e.*, to assert the rights of its affiliate under the arbitration agreement). Accordingly, we address only Prudential–Bache Securities' motion.

would not be of material assistance in this matter. D.Kan. Rule 206(d).

Plaintiff and defendant Prudential–Bache Securities, Inc. [hereinafter "Bache Securities"] entered into multiple client's agreements and option agreements, all of which contained arbitration clauses. Paragraph 14 of the client's agreements provides in pertinent part:

> Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof ... shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect.

Similarly, paragraph 10 of the option agreements provides:

> In the event of any dispute between us or claim by me or claim by you on account of the purchase, sale, handling, execution or endorsement of puts or calls for my account, the same shall be arbitrated in accordance with the rules of the exchange on which the put or call which is the subject of the dispute is traded or in accordance with the rules of the New York Stock Exchange Incorporated or the NASD, if the put or call is not traded on a national securities exchange.

As the Fifth Circuit recently stated, "when deciding whether to compel arbitration ..., the district court usually begins by asking whether 'the parties agree[d] to arbitrate the disputes in question.'" *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 833 F.2d 545, 546 (5th Cir.1987) (quoting *Mayaja, Inc. v. Bodkin*, 803 F.2d 157, 160 (5th Cir.1986)). Plaintiff raises no claim regarding the contracts' validity in his pleadings, and all of his claims fall explicitly within the above-quoted contract language. Consequently, we have no reason to question the contracts' validity and conclude that the parties did, in fact, agree to arbitrate the disputes presented in these consolidated cases.

Despite these agreements to arbitrate, plaintiff, relying on a 1953 Supreme Court decision and its progeny, contends that his claims under the 1933 Securities Act [hereinafter "1933 Act"] and the 1934 Securities Exchange Act [hereinafter "1934 Act"] are not arbitrable. Given the recent Supreme Court decision in *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), however, we conclude that plaintiff's claims under the 1934 Act, as well as his various state law claims, are arbitrable. However, plaintiff's 1933 Act claims are not arbitrable. Therefore, defendants' motion will be granted in part and denied in part.

### Background

In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that a predispute arbitration agreement could not be enforced to compel arbitration of a claim arising under section 12(2) of the 1933 Act. *Id.* at 438. Following this lead, several courts of appeals extended *Wilko* to claims arising under section 10(b) and rule 10b–5 of the 1934 Act. *See, e.g., Sterne v. Dean Witter Reynolds, Inc.*, 808 F.2d 480 (6th Cir.1987); *Wolfe v. E.F. Hutton & Co.*, 800 F.2d 1032 (11th Cir.1986); *Jacobson v. Merrill Lynch, Pierce, Fenner & Smith*, 797 F.2d 1197 (3d Cir.1986); *King v. Drexel Burnham Lambert*, 796 F.2d 59 (5th Cir.1986); *Conover v. Dean Witter Reynolds, Inc.*, 794 F.2d 520 (9th Cir.1986); *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir. 1986); *Merrill Lynch, Pierce, Fenner & Smith v. Moore*, 590 F.2d 823 (10th Cir. 1978). (NOTE: *McMahon* abrogated these decisions.) Notwithstanding these appellate court extensions of *Wilko*, the Court held in *McMahon* that agreements to arbitrate 1934 Act claims were enforceable. *McMahon*, —— U.S. at ——, 107 S.Ct. at 2344, 96 L.Ed.2d at 201.

Although the *McMahon* decision did reverse precedents in a majority of the federal circuit courts, the opinion follows the Court's consistent trend of broadening the scope of and strengthening the policy underlying the Federal Arbitration Act, 9 U.S. C. § 1 *et seq.* For example, in *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270

(1967), the Court held that the issue of whether a contract had been fraudulently induced (*i.e.*, whether the contract containing the arbitration clause was valid) was an arbitrable issue. *Id.* at 402–04, 87 S.Ct. at 1805–06. The *Prima Paint* decision spawned in the lower courts consistent conclusions that arbitrability questions must be addressed with a healthy regard for the federal policy favoring arbitration. Only seven years after the *Prima Paint* decision, the Court foreshadowed its *McMahon* holding in *Sherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270, *reh'g denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974). In *Sherk*, the Court upheld an arbitration agreement in an international commercial contract and compelled the parties to arbitrate the alleged violations of section 10(b) of the 1934 Act. *Id.* at 519–21, 94 S.Ct. at 2457–58. The Court again emphasized its support of the federal policy favoring arbitration in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.* when it concluded that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1982). Finally, in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1984), the Court rejected the "intertwining doctrine" [2] and broadened the reach of the Arbitration Act by holding that "the Arbitration Act requires district courts to compel arbitration of pendent [state law] arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217, 105 S.Ct. at 1239. All of these cases indicate the Court's desire to assure that the Arbitration Act would serve its intended purpose of giving arbitration agreements the same force and effect as other valid contracts. *See Sherk*, 417 U.S. at 511, 94 S.Ct. at 2453 (quoting H.R.Rep. 96, 68th Cong., 1st Sess. 1, 2

(1924)). Moreover, these cases evidence a trend which *McMahon* continued—a trend toward expanding the Arbitration Act's scope and toward enforcing valid arbitration agreements.

### Applicability of McMahon

Although the plaintiff attempts to factually distinguish *McMahon*, we are convinced that *McMahon* directly speaks to one issue presented by defendant's motion: are plaintiff's 1934 Act claims arbitrable pursuant to the arbitration clauses contained in the various client's and option agreements? Because plaintiff filed these lawsuits prior to the Court's deciding *McMahon*, however, we must determine whether *McMahon* applies to the case at hand.

The general rule is that "federal cases should be decided in accordance with the law existing at the time of decision." *St. Francis College v. Al–Khazraji*, —— U.S. ——, ——, 107 S.Ct. 2022, 2025, 95 L.Ed.2d 582, 589, *reh'g denied*, —— U.S. ——, 107 S.Ct. 3244, 97 L.Ed.2d 749 (1987). Nevertheless, a court may make case-by-case exceptions to this general rule "when a change in the law is unfairly disruptive of a litigant's course of conduct or reasonable expectations." *Noble v. Drexel, Burnham, Lambert, Inc.*, 823 F.2d 849, 850 (5th Cir.1987). The Supreme Court provided an analytical framework for determining whether a judicial decision should be applied retroactively in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolu-

---

**2.** The Fifth, Ninth, and Eleventh Circuits adopted the intertwining doctrine which provided that "[w]hen arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, [a] district court ... may in its discretion

deny arbitration as to the arbitrable claims and try all the claims together in federal court." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 216–17, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1984).

tion was not clearly foreshadowed. Second, it has been stressed that we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Finally, we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* at 106–07, 92 S.Ct. at 355 (citations and quotations omitted).

■■■ Considering these factors, we conclude that *McMahon* should be applied retroactively. First, *McMahon* established a new principle of law by overruling the clear precedent this circuit established in *Merrill Lynch, Pierce, Fenner & Smith v. Moore,* 590 F.2d 823 (10th Cir.1978). Relying on the *Wilko* decision, the Tenth Circuit concluded that 1934 Act claims were not arbitrable. Although *McMahon* overruled *Moore* and similar decisions in other circuits, *McMahon* did "not come out of the blue; in one aspect, it builds logically on an unswerving line of Supreme Court cases expanding the reach of arbitration agreements and affirming the importance of the Arbitration Act in the face of judicial hostility and the usual objections." *Noble,* 823 F.2d at 850. Second, retroactive application of *McMahon*'s new principle will advance its purpose of further strengthening the federal policy favoring arbitration. Third, plaintiff will not suffer substantial inequities if *McMahon* is applied retroactively. The plaintiff entered into broad arbitration agreements with defendant and makes no claim that he would not have entered into these agreements without the ability to litigate his claims in federal court. *See id.* at 851. Additionally, *"McMahon* alters only the forum for resolving [these] dispute[s] and not [plaintiff's] substantive rights." *Id.* Therefore, we conclude that *McMahon* is to be applied retroactively, even though it overruled clearly established Tenth Circuit precedent. *See Mayaja, Inc., S.A. v. Bodkin,* 824 F.2d 439, 440

(5th Cir.1987); *see also Bradley v. Richmond School Board,* 416 U.S. 696, 715, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1973) ("[E]ven where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect."). Accordingly, we hold plaintiff's 1934 Act claims against defendant are arbitrable.

*Arbitrability of Other Claims*

■■■ As a preliminary matter, we note that in his reply to defendant's motion, plaintiff raises a question regarding the validity of some of the contracts: plaintiff implies that some of the signatures are not authentic. Even if we were to assume that some signatures were not authentic, this fact alone would not prevent our enforcing the arbitration clauses contained in those contracts. As one district court explained:

> [A]n agreement to arbitrate need not be signed by the party to be charged in order to be enforceable. The Federal Arbitration Act "contains no built-in Statute of Frauds provision but merely requires that the arbitration provision itself be in writing. Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures." Like any other contract, a contract containing an arbitration provision may be binding on the parties based upon their course of conduct.

*First Citizens Municipal Corp. v. Pershing Division of Donaldson, Lufkin & Jenrette Securities Corp.,* 546 F.Supp. 884, 887 (N.D.Ga.1982) (citations omitted). In the present case, plaintiff's conduct, as well as defendants', establishes the existence of a contract, and plaintiff presents no facts which would lead us to believe that the parties did not intend to enter into customer-broker/dealer contracts for the purchase and sale of securities. Furthermore, plaintiff's allegations as to the validity of some contracts concern the contracts as a whole, not simply the arbitration clause. When claims of invalidity concern the whole contract rather than just the arbitra-

tion clause, such claims are arbitrable. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967) (fraud in the inducement of the contract as a whole is arbitrable); *Power Replacements, Inc. v. Air Preheater Co.*, 426 F.2d 980, 983 (9th Cir.1970) ("Where the validity of a contract is challenged upon the ground of fraud, the issue of fraud is a proper subject of arbitration."); *Arent v. Shearson/American Express, Inc.*, 633 F.Supp. 770, 772 (D.Mass.1985) (adhesion claims are arbitrable). Consequently, should plaintiff appropriately raise the issue of contract validity in a request to amend his pleadings, we would not hesitate to send this issue to arbitration.

Plaintiff objects to the arbitration of only two claims, besides his 1934 Act claims: the claim for an accounting (Count VI in Case No. 86–2535) and the 1933 Act claim (Count II in Case No. 86–2498). Evidently, plaintiff concedes the arbitrability of the remaining claims, in keeping with the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1984) (*see* discussion *supra*, at p. 789).

## A. The Accounting Claim

Under a rule promulgated by the Securities and Exchange Commission (SEC), a broker/dealer or his agent must make a record of all customer account transactions, including the name of the customer, the name, amount and price of the security, and the date and time when such transaction took place. 17 C.F.R. § 240.15c1–7(b) (1987). Failure to comply with these accounting requirements is defined as a manipulative, deceptive, or other fraudulent device or contrivance within the meaning of section 15(c)(1) of the 1934 Act. *Id.* Apparently, plaintiff has received some form of an accounting from defendant Bache Securities because his complaint states that many transactions are unexplained and confusing. Plaintiff is not satisfied with the accounting defendant provided, and requests a complete accounting of all transactions relative to his accounts in order to give him an opportunity to discover all the fraud allegedly perpetrated by defendant.

Pursuant to the Supreme Court's direction to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration[,]" we find plaintiff's accounting claim to be arbitrable. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The arbitrability of a particular claim depends on the language of the parties' arbitration agreement and the relationship of the claim to the subject matter of the arbitration agreement. *See, e.g., Goldberg v. Donaldson, Lufkin & Jenrette Securities Corp.*, 650 F.Supp. 222, 228 (N.D.Ga.1986); *Pioneer Properties, Inc. v. Martin*, 557 F.Supp. 1354, 1366 (D.Kan.1983), *appeal dismissed*, 776 F.2d 888 (10th Cir.1985). The language of the arbitration clauses in the client's agreements is broad. *See supra* p. 788; *see also Mediterranean Enterprises, Inc. v. Ssangyong*, 708 F.2d 1458, 1464 (9th Cir.1983) (" 'arising out of or relating to this agreement' has been labelled a 'broad arbitration clause' "). Likewise, the language of the arbitration clauses in the option agreements is broad, referring to "any dispute ... or claim ... on account of the purchase, sale, handling, execution or endorsement of puts or calls for my account...." When an arbitration clause is broad, "any claim that falls within its scope will be considered arbitrable absent compelling proof to the contrary.... 'Proof to the contrary' requires language that is 'clear and unambiguous' or 'unmistakably clear.' " *International Union of Elevator Constructors, AFL–CIO v. National Elevator Industry, Inc.*, 772 F.2d 10, 13 (2d Cir.1985) (quoting *Gangemi v. General Electric Co.*, 532 F.2d 861, 866 (2d Cir.1976)).

Plaintiff's accounting claim falls within the scope of both arbitration clauses: plaintiff's allegations of unexplained and purposely confusing transactions raise a controversy relating to, and a dispute regarding, the handling of his accounts. *See, e.g., Genesco, Inc. v. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987) ("If the allega-

tions underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.")

### B. The 1933 Act Claim

■ Although the Supreme Court in *McMahon* narrowed *Wilko v. Swan*'s holding and questioned its underlying rationale, the Court did not expressly overrule *Wilko*. *See McMahon*, —— U.S. at ——, ——, 107 S.Ct. at 2338–42, 96 L.Ed.2d at 195–199. Courts considering the arbitrability of 1933 Act claims in the wake of *McMahon* have come to opposite conclusions. One circuit court and five district courts have held that because *Wilko* was not expressly overruled in *McMahon*, *Wilko* is still binding precedent; thus, 1933 Act claims are not arbitrable. *See Chang v. Lin*, 824 F.2d 219, 222 (2d Cir.1987); *Schultz v. Robinson–Humphrey/American Express, Inc.*, 666 F.Supp. 219, 220 (M.D.Ga.1987); *Continental Service Life & Health Insurance Co. v. A.G. Edwards & Sons, Inc.*, 664 F.Supp. 997, 1001 (M.D.La.1987); *McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741 (S.D.N.Y.1987); *Goldberg v. Drexel Burnham Lambert, Inc.*, No. 83–C–8586 (E.D.Ill. Dec. 16, 1987) [available on WESTLAW, 1987 WL 31604] (LEXIS, Genfed library, Courts file); *Helfricht v. Jefferies & Co., Inc.*, No. 85–0466 (D.N.J. Oct. 14, 1987) [available on WESTLAW, 1987 WL 14777] (LEXIS, Genfed library, Courts file). On the other hand, two district courts have concluded that "*McMahon* so seriously undermined *Wilko*'s rationale that 1933 Act Claims ... must be sent to arbitration." *Staiman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 673 F.Supp. 1009, 1011 (C.D. Cal.1987); *see also Aronson v. Dean Witter Reynolds, Inc.*, 675 F.Supp. 1324 (S.D. Fla.1987). While both lines of decisions justify their divergent conclusions with sound reasoning, we are more persuaded by those courts holding that 1933 Act claims are not arbitrable.

First, the Court specifically chose not to overrule *Wilko*. *McMahon*, —— U.S. at ——, 107 S.Ct. at 2341, 96 L.Ed.2d at 199 ("Stare decisis concerns ... counsel against upsetting Wilko's ... conclusion

under the Securities Act."). Although the Court narrowed *Wilko*'s holding (*Id.* —— U.S. at ——, 107 S.Ct. at 2338, 96 L.Ed.2d at 195) and questioned the *Wilko* Court's mistrust of arbitration (*Id.* —— U.S. at ——, ——, 107 S.Ct. at 2339–41, 96 L.Ed.2d at 196–98), the Court did not state or imply that *Wilko*'s application to 1933 Act claims would be different, despite *McMahon*'s conclusion that arbitration procedures are now generally reliable. *Id.* —— U.S. at ——, ——, 107 S.Ct. at 2341–42, 96 L.Ed.2d at 198–99.

Second, the legislative history quoted in *McMahon* indicates Congressional ratification of *Wilko*. Referring to a 1975 amendment to section 28 of the 1934 Act, a House Conference Report stated: "It was the clear understanding of the conferees that this amendment did not change existing law, as articulated in *Wilko v. Swan*...." *Id.* —— U.S. at ——, 107 S.Ct. at 2343, 96 L.Ed.2d at 200 (quoting H.R. Conf.Rep. No. 94–229, p. 111 (1975)), U.S. Code Cong. & Admin.News 1975 pp. 179, 321, 342. In interpreting this statement, the *McMahon* Court surmised that "the committee may simply have wished to make clear that the amendment to § 28(b) was not otherwise intended to affect Wilko's construction of the Securities Act." *Id.* —— U.S. at ——, 107 S.Ct. at 2343, 96 L.Ed.2d at 201. Therefore, Congress' ratification of *Wilko* indicates an intent to make 1933 Act claims non-arbitrable, an intent which has not been duplicated for 1934 Act claims. *See Schultz*, 666 F.Supp. at 220.

Finally, the *McMahon* Court's reference to the distinction between section 12(2) claims and section 10(b) claims counsels against our reading *McMahon* as an implicit rejection of *Wilko*. *See McMahon*, —— U.S. at ——, 107 S.Ct. at 2343, 96 L.Ed.2d at 201. This distinction was articulated in the Court's opinion in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), and has been labelled "the colorable argument." Justice Stewart, writing for the five justice majority, stated:

[A] colorable argument could be made that even the semantic reasoning of the *Wilko* opinion does not control the case before us. *Wilko* concerned a suit brought under § 12(2) of the Securities Act of 1933, which provides a defrauded purchaser with the 'special right' of a private remedy for civil liability.... There is no statutory counterpart of § 12(2) in the Securities Exchange Act of 1934, and neither § 10(b) of that Act nor Rule 10b–5 speaks of a private remedy to redress violations of the kind alleged here. While federal case law has established that § 10(b) and Rule 10b–5 create an implied private cause of action, ... the Act itself does not establish the 'special right' that the Court in *Wilko* found significant.

*Id.* at 513–14, 94 S.Ct. at 2454. Despite the uniform criticism of this "colorable argument" by commentators (*McMahon*, — U.S. at —— n. 2, 107 S.Ct. at 2347 n. 2, 96 L.Ed.2d at 206 n. 2 (Blackmun, J., concurring)) and Justice Blackmun's expressed desire to bury the argument (*Id.* —— U.S. at —— n. 2, 107 S.Ct. at 2348 n. 2, 96 L.Ed.2d at 205 n. 2), the 5–4 *McMahon* majority did not reject the arguable distinction between section 12(2) and 10(b) claims. Consequently, without express direction from the Supreme Court or Congress, this court cannot extinguish plaintiff's congressionally given right to litigate his section 12(2) claims. We therefore conclude that plaintiff's 1933 Act claims against defendant are not arbitrable.

### Parties Subject to Arbitration

Having determined that all of plaintiff's claims are arbitrable, except for his 1933 Act claims, the court must now decide whether defendant Prudential–Bache Agriculture [hereinafter "Bache Agriculture"] is a proper arbitration party. Plaintiff contends that defendant Bache Agriculture cannot be a party to the arbitration because it was not a party to any of the contracts containing the arbitration agreements. While we agree that the right to arbitrate is created by contract, *see, e.g., Laborers' International Union of North America, Local Union No. 309, AFL–CIO v. W.W. Bennett Construction Co., Inc.,* 686 F.2d 1267, 1274 (7th Cir.1982), we do not agree that non-parties cannot be bound by an arbitration agreement. Non-parties can be bound under the general principles of contract law or under a broadly worded arbitration agreement. *See, e.g., Wells Fargo Bank International Corp. v. London Steam–Ship Owners' Mutual Ins. Ass'n, Ltd.,* 408 F.Supp. 626, 629 (S.D.N.Y. 1976); *see also Steinberg v. Illinois Co., Inc.,* 635 F.Supp. 615, 617 (N.D.Ill.1986). For example, the following non-parties have been held to be bound by arbitration agreements: (1) broker/dealer's employees, *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185, 1187–88 (9th Cir.1986); (2) guarantors, *Merrill–Lynch Commodities v. Richal Shipping Corp.,* 581 F.Supp. 933, 940–41 (S.D.N.Y.1984); (3) potential indemnitors, *Caribbean Steamship Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S.,* 598 F.2d 1264, 1267 (2d Cir.1979); and (4) affiliated corporations, *Knorr Brake Corp. v. Harbil, Inc.,* 556 F.Supp. 489, 493 (N.D. Ill.1983).

▪ Without deciding whether Bache Agriculture is bound, as an affiliate, to Bache Securities' arbitration agreements,[3] we have determined that allowing Bache Agriculture to be a party to the arbitration is reasonable under the circumstances of this case for the following reasons. First, Bache Agriculture consents to being an arbitration party, as evidenced by its motion to compel arbitration. Second, plaintiff's 1934 Act claims against Bache Agriculture[4] are identical to his 1934 Act

---

**3.** At least one district court has struggled, albeit briefly, with the question of whether affiliated corporations can assert one another's claims in arbitration. *See In the Matter of the Arbitration, Fried, Krupp, G.M.B.H.,* 674 F.Supp. 1022 (S.D. N.Y.1987). Because the parties' memoranda do not adequately detail the relationship between the two defendants, we are unable to decide whether Bache Agriculture's status as an affiliate, by itself, warrants including it in the arbitration procedures.

**4.** Plaintiff filed only two counts against defendant Bache Agriculture: violations of the 1933 Act and violations of the 1934 Act (Counts I and II of Case No. 86–2498). Because of our prior

claims against Bache Securities, which we have held to be arbitrable under *McMahon. See supra,* p. 790. Third, plaintiff's claims against both defendants arise out of the same transactions. Finally, plaintiff's claims against Bache Agriculture fall within the broad language of the two arbitration clauses.[5] Thus, we conclude that defendant Bache Agriculture, though a nonparty to the arbitration agreement, should nevertheless be a party to the arbitration of plaintiff's 1934 Act claims.[6]

### SEC Rule 15c2–2

In addition to his attempt to distinguish *McMahon* and thereby avoid arbitration, plaintiff contends that SEC Rule 15c2–2, which was operative at all times during plaintiff's dealings with the defendant, in effect modified the arbitration agreements to allow plaintiff the option of litigating or arbitrating his claims. Rule 15c2–2 provided:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2(a) (1987). Broker/dealers could comply with the rule by providing customers a written disclosure stating:

Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the Federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

*Id.* § 240.15c2–2(b).

By adopting Rule 15c2–2, the SEC reflected what it believed to be a settled principle of law: that under *Wilko v. Swan* and the appellate court extensions of its reasoning, "pre-dispute arbitration agreements are unenforceable under both the 1933 Act and the 1934 Act." *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 795 F.2d 1393, 1398 n. 17 (8th Cir. 1986); *see also Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 833 F.2d 545, 547 (5th Cir.1987); *Zerman v. Jacobs,* 751 F.2d 82, 84 (2d Cir.1984), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111, *reh'g denied,* 474 U.S. 1026, 106 S.Ct. 584, 88 L.Ed.2d 566 (1985); *Shotto v. Laub,* 632 F.Supp. 516, 527 (D.Md. 1986); *Levendag v. Churchill,* 623 F.Supp. 620, 623 (D.S.C.1985). As one district court explained, "The rule was enacted to ensure that brokers would not mislead customers into believing that they had no remedy in court when in fact" they did. *Steinberg v. Illinois Co., Inc.,* 635 F.Supp. 615, 617 (N.D.Ill.1986); *see also Shotto,* 632 F.Supp. at 527; *Finkle & Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1510 (S.D. N.Y.1985).

---

decision regarding the nonarbitrability of plaintiff's 1933 Act claims, only plaintiff's 1934 Act claims against Bache Agriculture will be implicated in this discussion.

**5.** Another reason for allowing Bache Agriculture to participate in the arbitration of plaintiff's 1934 Act claims is the possibility that this defendant could defensively invoke the doctrine of collateral estoppel. *See Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 671 F.Supp. 972, 976 (S.D.N.Y.1987) (defining the defensive use of collateral estoppel); *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (nonparties to prior action can use collateral estoppel); *Crutsinger v. Hess,* 408 F.Supp. 548, 554 (D.Kan.1976) (supporting

defensive use of collateral estoppel by a nonparty to prior action). Collateral estoppel can be applied to arbitration decisions. *See, e.g., United States v. Utah Construction Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1965); *Maidman v. O'Brien,* 473 F.Supp. 25, 29–30 (S.D. N.Y.1979).

**6.** Plaintiff asserts the same argument against defendants Almahurst Bloodstock IV, Almahurst Incorporated, and P.J. Baugh. Since these defendants did not join in the motion now before the court, we do not feel that a decision concerning these defendants' rights to participate in the arbitration procedures is appropriate at this time.

█ Defendant Bache Securities provided plaintiff with the required Rule 15c2–2 notice. Plaintiff argues that the notice preserved his option to litigate his claims in federal court, despite his agreement to arbitrate. In essence, plaintiff is arguing that the Rule 15c2–2 notice became a part of his contracts with defendant. We find plaintiff's argument unconvincing. Most courts addressing the effect of Rule 15c2–2 on arbitration agreements have held that the rule is merely a procedural mechanism and "does not create or preserve rights to litigate in federal court, and does not alone prevent arbitration of federal securities claims." *Rhoades v. Powell*, 644 F.Supp. 645, 655 n. 1 (E.D.Cal.1986); *see also Woodyard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F.Supp. 760, 765–66 (S.D.Tex.1986); *Steinberg*, 635 F.Supp. at 617; *Shotto*, 632 F.Supp. at 527; *Finkle & Ross*, 622 F.Supp. at 1510; *but see Scharp v. Cralin & Co., Inc.*, 617 F.Supp. 476, 480 (S.D.Fla.1985). Indeed, it is a well-recognized tenet of administrative law that an agency cannot promulgate rules which enlarge or restrict statutory rights. *See, e.g., Atchison, Topeka & Santa Fe Railway Co. v. Interstate Commerce Commission*, 607 F.2d 1199, 1203 (7th Cir.1979); *National Ass'n of Regulatory Utility Commissioners v. Federal Communications Commission*, 533 F.2d 601, 617 (D.C.Cir.1976). Thus, the SEC could not have promulgated Rule 15c2–2 for the purpose of enlarging " 'the forums legally available to a litigant or to invalidate arbitration clauses that are enforceable under the [Arbitration] Act[,]' " as such action would have been beyond the scope of its authority. *Shotto*, 632 F.Supp. at 527 (quoting *Pruzan v. Paine, Webber, Jackson & Curtis, Inc.*,

No. C–84–2016A (N.D.Ga. Aug. 28, 1985)). Accordingly, we conclude defendant's compliance with Rule 15c2–2 did not preserve or create an option to litigate plaintiff's otherwise arbitrable claims. Plaintiff agreed to arbitrate; he did not agree to choose between arbitration and litigation.[7]

*Waiver*

Plaintiff also contends that defendant Bache Securities has waived its right to compel arbitration because (1) defendant delayed filing its motion; (2) defendant actively engaged in discovery; and (3) plaintiff has suffered prejudice from defendant's actions. Before discussing each of these arguments, we note, as have many courts, that "in view of the strong federal policy in favor of arbitration, 'any doubts concerning ... waiver, delay, or a like defense to arbitrability' should be resolved in favor of arbitration." *Nesslage v. York Securities, Inc.*, 823 F.2d 231, 234 (8th Cir.1987) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)); *see also Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir.1986). Consequently, plaintiff bears a heavy burden of proving waiver. *Fisher*, 791 F.2d at 694.

**A. Delay**

█ Plaintiff filed his cases in November 1986. Defendants did not move to compel arbitration until July 1987. Plaintiff argues that this eight-month delay, plus defendants' failure to compel the arbitration of the state law claims under the authority of *Dean Witter Reynolds v. Byrd*, 470 U.S.

7. We also note that the SEC recently rescinded Rule 15c2–2. SEC Release No. 34–25034 (Oct. 15, 1987); *see also* 52 Fed.Reg. 39,216 (Oct. 21, 1987) (effective date of rescission). In this release, the SEC explained that in light of the *McMahon* decision the rule was no longer appropriate. At least one circuit court has held that the rescission should be applied retroactively. *Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith*, 833 F.2d 545, 546 (5th Cir. 1987). As we stated previously, the usual rule is that "federal cases should be decided in accordance with the law as it exists at the time of the decision." *Noble v. Drexel, Burnham, Lambert,*

*Inc.*, 823 F.2d 849, 851 (5th Cir.1987). This rule "applies with equal force to changes in administrative law." *Villa Garcia*, 833 F.2d at 547. If retroactive application would result in manifest injustice, however, the court may reject the usual rule. *Bradley v. Richmond School Board*, 416 U.S. 696, 716, 94 S.Ct. 2006, 2018, 40 L.Ed. 2d 476 (1973). Because Rule 15c2–2 was a procedural device, its enactment did not alter plaintiff's substantive rights. Likewise, the rule's rescission does not impair plaintiff's substantive rights. Consequently, whether or not the SEC's decision to rescind Rule 15c2–2 should be applied retroactively is a non-issue.

213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1984), plus defendants' failure to move for a stay pending the Supreme Court's decision in *McMahon,* are acts of omission inconsistent with the right to arbitrate and thus constitute a waiver of that right. Mere delay does not warrant a finding of waiver. *See Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968). Additionally, when the delay is justified, waiver will not occur. When plaintiff filed his cases, *Merrill Lynch, Pierce, Fenner & Smith v. Moore,* which held that 1934 Act claims, as well as 1933 Act claims, were not arbitrable, was still the law in the Tenth Circuit. 590 F.2d 823 (10th Cir.1978). Therefore, a motion to compel arbitration would have been futile. Additionally, because the federal claims were not arbitrable under *Moore,* there would be no pendent state claims arbitrable under *Byrd.* Finally, plaintiff cites no authority for placing on litigants an affirmative duty to stay proceedings pending a Supreme Court decision. Under the circumstances of these cases, defendant filed its motion to compel arbitration one month after the Supreme Court's decision in *McMahon,* which reversed Tenth Circuit precedent regarding the arbitrability of 1934 Act claims, and thus was timely filed. *See, e.g., Nesslage,* 823 F.2d at 234; *Fisher,* 791 F.2d at 697.

### B. Discovery

■ At the time the parties were conducting discovery, none of plaintiff's claims appeared to be arbitrable. "Parties can conduct discovery with respect to nonarbitrable claims without waiving their right to arbitrate arbitrable claims." *Nesslage,* 823 F.2d at 234. If such were not the rule, this defendant would have been placed between Scylla and Charybdis: it would have had to choose between (1) conducting discovery and forever waiving its right to compel arbitration and (2) not conducting discovery in hopes that controlling precedent would be overruled before trial. Moreover, discovery to date has not been extensive enough to cause plaintiff unnecessary expenses; it would appear that the discovery thus far will be useable in arbitration. Therefore, defendant's participation in dis-

covery did not constitute waiver of the right to compel arbitration.

### C. Prejudice

■ According to one district court, prejudice is found when

(1) a party that seeks arbitration engages in extensive discovery that is not available in arbitration; (2) when the party seeking arbitration causes extensive expense and delay by litigating continuously in court before seeking arbitration; and (3) when a party has continued so far in the litigation that a chance to arbitrate after sensing an adverse decision would in effect give that party another chance in a second forum.

*Rush v. Oppenheimer & Co.,* 606 F.Supp. 300, 301 (S.D.N.Y.), *rev'd on other grounds,* 779 F.2d 885 (2d Cir.1985). None of these indicators of prejudice are present in the case at hand. Indeed, plaintiff's only complaint of prejudice concerns the expenses and attorney's fees incurred to date responding to production requests, interrogatories, and requests for admissions. Plaintiff's complaint is rather ironic, considering he chose to litigate rather than arbitrate his claims. Incurring expenses and attorney's fees in preparation for trial has not prejudiced the plaintiff in such a way or to such an extent as to warrant a finding of waiver. Because plaintiff has not met his heavy burden of proof, we conclude that defendant did not waive its right to compel arbitration.

### *Stay Pending Arbitration*

■ Under section 3 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* "the court must stay litigation of all claims subject to arbitration, but has discretion whether to stay or proceed with the non-arbitrable claims." *Rhoades v. Powell,* 644 F.Supp. 645, 658 (E.D.Cal.1986). Section 3 of the Arbitration Act thus requires us to stay the litigation of all plaintiff's claims except his 1933 Act claims, which are non-arbitrable. *See supra* pp. 791–93. As to the 1933 Act claims, however, we must decide whether a stay pending arbitration of the other claims is warranted under the

circumstances of this case. Defendant has presented no compelling reasons for staying the federal litigation of plaintiff's 1933 Act claims. Additionally, the case law indicates a decided preference for denying motions to stay the litigation of nonarbitrable federal claims pending arbitration of related arbitrable claims. *See, e.g., Chang v. Lin,* 824 F.2d 219, 222 (2d Cir.1987); *Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961, 971 (S.D.N.Y.1987); *Continental Service Life & Health Insurance Co. v. A.G. Edwards & Sons, Inc.,* 664 F.Supp. 997, 1001 (M.D.La.1987); *Cummings v. A.G. Edwards & Sons, Inc.,* 637 F.Supp. 132, 133 (M.D.La.1986); *but see Schultz v. Robinson–Humphrey/American Express, Inc.,* 666 F.Supp. 219, 220–21 (M.D.Ga.1987) (due to insubstantial nature of plaintiff's section 12(2) claims, stay granted). The Second Circuit well expressed the reasons for denying a stay of plaintiff's nonarbitrable 1933 Act claim:

> A plaintiff has the right to litigate a '33 Act claim in a federal court notwithstanding any arbitration agreement with the defendant.... This right is substantially diminished if such claims must lay dormant until other claims arising out of the same series of events have been arbitrated. Evidence supporting the federal claims may become stale or unavailable prior to the conclusion of the arbitration. Moreover, delay generally works to the advantage of defendants who may well be inclined to prolong the arbitration unnecessarily in the hope that plaintiffs ultimately will be forced to abandon their nonarbitrable claims. If nonarbitrable federal claims are stayed pending the arbitration of other federal or state claims, plaintiffs alleging fraud in securities transactions face the unhappy choice of either forgoing arbitrable claims in order to obtain prompt consideration of the other claims or waiting months, if not years, before their nonarbitrable claims will be heard by a federal court.

*Chang,* 824 F.2d at 222.

We agree with the Second Circuit, and therefore conclude that a stay of plaintiff's 1933 Act claims pending arbitration is inappropriate.

*Protective Order*

Defendant also moved for a protective order to prevent further discovery pending the court's decision on the motion to compel arbitration. Under our local court rules, a motion for a protective order operates as a stay of the discovery sought to be protected. D.Kan.Rule 210(c). Consequently, defendant's motion accomplished the same results as if we had granted the protective order. The motion for a protective order is thus moot.

IT IS THEREFORE ORDERED that defendant's motion to compel arbitration and for a stay pending arbitration is granted as to plaintiff's 1934 Act claims and the pendent state law claims.

IT IS FURTHER ORDERED that defendant's motion to compel arbitration and for a stay pending arbitration is denied as to plaintiff's 1933 Act claims.

IT IS FURTHER ORDERED that defendant Prudential–Bache Agriculture, Inc., is allowed to participate in the arbitration of plaintiff's 1934 Act claims.