791 F.2d 691
 Blue Sky L. Rep. P 72,426, Fed. Sec. L. Rep. P 92,774
George B. FISHER, IV, Ellen R. Fisher, and Omnisports, a
partnership, d/b/a the Snug Company, Plaintiffs-Appellees.
v.
A.G. BECKER PARIBAS INCORPORATION A Delaware corporation,
Defendant-Appellant.
 No. 85-3962.
 United States Court of Appeals,
Ninth Circuit.
 Argued April 28, 1986.
Submitted May 2, 1986.
Decided June 6, 1986.
 
 Charles F. Brega, Stuart N. Bennett, Roath & Brega, Denver, Colo., for plaintiffs-appellees.
 Todd E. Gordinier, Briane Nelson Mitchell, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., for defendant-appellant.
 Appeal from the United States District Court for the District of Idaho.
 Before: SKOPIL, ALARCON, and WIGGINS, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Defendant-appellant A.G. Becker Paribas, Inc. (hereinafter Becker) appeals the district court's denial of Becker's Motion for Stay and to Compel Arbitration. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1292(a)(1).
 
 
 2
 We must decide whether, in an action involving alleged federal securities law violations and common law claims, a defendant's decision not to file a motion to compel compliance with a contractual agreement to arbitrate all disputes made prior to the Supreme Court's rejection of the intertwining doctrine in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), constituted a waiver of the right to arbitration. We have concluded that no waiver occurred because Becker did not act inconsistently with the contractual right to seek arbitration. Becker was entitled to rely on the intertwining doctrine and the observation by this court in De Lancie v. Birr, Wilson & Co., 648 F.2d 1255, 1259 n. 4 (9th Cir.1981) that arbitration should be denied where common law claims are intertwined with securities law violations, in deciding that it would be futile to file a motion to compel arbitration. We have also determined that Fisher has failed to show that it has been prejudiced by the delay in the filing of the motion to compel arbitration.
 
 I. FACTS
 
 3
 In September, 1980, plaintiffs-appellees George Fisher, Ellen Fisher and Omnisports (hereinafter the Fishers) established three general margin accounts with Becker, a stock brokerage firm. The Fishers signed a number of agreements to open the accounts, each of which contains the following or similar language: "It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration...."
 
 
 4
 The Fishers claim that from October of 1980 to June of 1981, Becker executed several unauthorized purchases of stock in Felmont Oil Corp. and failed to execute numerous requested sales of the same stock. The Fishers allege that as a result of Becker's alleged mismanagement of the Fishers' accounts, they lost approximately $2,360,000.
 
 
 5
 The Fishers did not seek arbitration of their claims against Becker as required by the mandatory language of the arbitration clause. Instead, they filed this action in the United States District Court of Idaho on August 21, 1981, shortly after we decided De Lancie, 648 F.2d 1255, on June 26, 1981.
 
 
 6
 The complaint alleged violations of federal securities laws as well as pendent state securities and common law claims.[1] Becker filed its answer on October 28, 1981, and raised several affirmative defenses. Becker did not raise arbitration as an affirmative defense. For the ensuing 3 1/2 years, both parties filed pretrial motions and engaged in extensive discovery.
 
 
 7
 Becker did not file a motion to compel arbitration at the time the answer was prepared because Becker's attorney concluded that "given the state of the law at that time, a motion to compel arbitration would not be successful and would be a futile gesture." Affidavit of William B. Campbell p 3. No evidence was offered by the Fishers to rebut or impeach Mr. Campbell's affidavit.
 
 
 8
 The district court orally denied Becker's motion to compel arbitration on the grounds that "there's been a knowing waiver of a right here and they've been prejudiced by it." The district court declined to reach the question whether the Rule 10b-5 claim is arbitrable.
 
 II. STANDARD OF REVIEW
 
 9
 Where, as here, the concern is whether the undisputed facts of defendant's pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law which we review de novo. Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985).
 
 III. DISCUSSION
 
 10
 Becker seeks reversal of the district court's order denying its motion to compel arbitration on the following grounds:One. The right to compel arbitration where state law claims and federal securities claims are intertwined did not exist until the Supreme Court's decision in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).
 
 
 11
 Two. The record does not show that Becker intentionally relinquished an existing right to compel arbitration.
 
 
 12
 Three. The Fishers failed to establish that they were prejudiced by Becker's assertion of its right to compel arbitration more than three years after the action was filed.
 
 A. Test for Waiver
 
 13
 Waiver of a contractual right to arbitration is not favored. Lake Communications, Inc. v. ICC Corp., 738 F.2d 1473, 1477 (9th Cir.1984); Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., 572 F.2d 1328, 1330 (9th Cir.1978). Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements. See Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983) (as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability); Shinto Shipping, 572 F.2d at 1330 (waiver is not favored and the facts must be viewed in light of the strong federal policy supporting arbitration agreements). See also Byrd, 105 S.Ct. at 1242 (the purpose of the Arbitration Act was to ensure judicial enforcement of privately made agreements to arbitrate). Because waiver of the right to arbitration is disfavored, "any party arguing waiver of arbitration bears a heavy burden of proof." Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1025 (11th Cir.1982); Brown v. E.F. Hutton & Co., Inc., 610 F.Supp. 76, 79 (S.D.Fla.1985).
 
 
 14
 A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. See Shinto Shipping, 572 F.2d at 1330 (the court "must be convinced not only that the appellee acted inconsistently with that arbitration right, but that the appellant was prejudiced by this action before we can find a waiver"). See also Lake Communications, 738 F.2d at 1477 ("More is required than action inconsistent with an arbitration provision; prejudice to the party opposing arbitration must also be shown."); ATSA of California, Inc. v. Continental Insurance Co., 702 F.2d 172, 175 (9th Cir.1983) (inconsistent behavior alone is not sufficient; the party opposing arbitration must have suffered prejudice), amended, 754 F.2d 1394 (1985).
 
 
 15
 B. Acts Inconsistent with an Existing Right to Arbitration
 
 
 16
 Becker's primary contention on appeal is that it could not have waived its right to arbitration because it did not have an enforceable right to arbitration until the Supreme Court rejected the intertwining doctrine in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Becker argues that it would have been futile to file a motion to compel arbitration prior to the Byrd decision because this court had previously indicated its approval of the intertwining doctrine in De Lancie v. Birr, Wilson & Co., 648 F.2d at 1259 n. 4. In footnote 4 of De Lancie, we stated as follows:
 
 
 17
 We note that even if the January 1978 transactions were considered arbitrable, the court could apply a variation of the "doctrine of intertwining" to hear the entire claim in district court. That doctrine, applied primarily in the Fifth Circuit, is "an important judicially-created exception ... carved out of [the Arbitration Act's] proarbitration scheme." Miley v. Oppenheimer & Co., 637 F.2d 318, 334 (5th Cir.1981). The doctrine holds that "when it is impractical if not impossible to separate out nonarbitrable from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over federal securities claims." Id. at 335, quoting Sibley v. Tandy Corp., 543 F.2d 540, 543 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).
 
 
 18
 The Fishers do not dispute Becker's contention that waiver cannot be shown where the agreement of the parties to arbitrate all disputes arising out of the contract is unenforceable. Instead, the Fishers assert that "Becker clearly had the right to seek arbitration of the Fishers' claims against it from the time the complaint was filed until 1984, when the Ninth Circuit finally adopted the intertwining doctrine ...." Appellees' brief, page 12.
 
 
 19
 What the Fishers' argument ignores, however, is that Becker properly perceived that it was futile to file a motion to compel arbitration until Byrd was decided. Until the Supreme Court rejected the intertwining doctrine, most federal courts had concluded that when arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court should deny arbitration as to the arbitrable claims in order to protect the jurisdiction of the federal court and avoid any possible preclusive effect.
 
 
 20
 As of August, 1981 when the Fishers filed this action, a number of federal courts had adopted the intertwining doctrine and refused to compel arbitration if the complaint raised both arbitrable and nonarbitrable claims. In De Lancie, we commented that if a district court finds there are arbitrable state claims and nonarbitrable federal claims, it can apply the intertwining doctrine and deny arbitration. 648 F.2d at 1259 n. 4. We recognize that our approval of the intertwining doctrine was an "even if" comment that was not necessary to a resolution of the issues in that case. Nevertheless, the unmistakable import of our dicta in De Lancie was that an agreement requiring arbitration was unenforceable if state claims and securities law violations were intertwined.
 
 
 21
 Prior to our decision in De Lancie, two district courts in this circuit published opinions acknowledging the existence of the intertwining doctrine. In Macchiavelli v. Shearson, Hammill & Co., Inc., 384 F.Supp. 21 (E.D.Cal.1974), an investor filed suit against a stock brokerage firm alleging breach of contract and violations of federal securities laws. The district court noted that it generally had broad discretion to split the causes of action between the federal court and arbitration, but recognized that such a split may not be possible where the federal law issues were "inseparable" from the other issues. Id. at 31. Nonetheless, the court in Macchiavelli decided that severance in that case was possible because "[a]lthough related, the claims of Securities Act violations in this case are clearly severable from the other claims, both factually and legally." Id.
 
 
 22
 In Milani v. Conticommodity Services, Inc., 462 F.Supp. 405 (N.D.Cal.1976), an investor sued a commodities brokerage firm. The complaint alleged violations of the Commodity Exchange Act as well as common law fraud, negligence, rescission, and breach of fiduciary duty. Id. at 406. The district court refused to compel arbitration of the common law claims because each of them "[arose] out of the same transaction as the CEA claim" and "[t]wo parallel actions seem[ed] inefficient and unwarranted." Id. at 407. Because the "same facts would be considered by the court and then by arbitrators," the court denied the defendant's motion to compel arbitration of the pendent claims.
 
 
 23
 In 1976, the Fifth Circuit also acknowledged the doctrine of intertwining. In Sibley v. Tandy Corp., 543 F.2d 540, 543 (5th Cir.1976), cert. denied, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), the Fifth Circuit stated: "[W]hen it is impractical if not impossible to separate out nonarbitrable federal securities law claims from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over the federal securities act claims." The Sibley court did not apply the intertwining doctrine, however, because it concluded "in this case, the claims were not 'intertwined' in the legal sense." Id. The Fifth Circuit did apply the intertwining doctrine a few years later in Miley v. Oppenheimer & Co., Inc., 637 F.2d 318, reh'g denied, 642 F.2d 1210 (5th Cir.1981). In Miley, an investor sued a brokerage company and two of its registered representatives to recover under federal securities laws, Texas common law, and Texas statutory law for alleged churning of her account. Id. at 325. The court stated that "arbitration [of the state claims] should not be ordered where '[a]n arbitrator making a decision on the common law claims would [be] impelled to review the same facts needed to establish the plaintiff's securities law claim.' " Id. at 335 (quoting Sibley, 543 F.2d at 543). The court concluded the district court had not erred in refusing to order arbitration of the pendent state law claims. Id. at 336. See also Sawyer v. Raymond, James & Associates, Inc., 642 F.2d 791, 793 (5th Cir.1981) (severance of common law claims which were inextricably tied to the factual allegations supporting the securities claims was impractical and inappropriate).
 
 
 24
 In 1979, the Sixth Circuit acknowledged the intertwining doctrine in Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017 (6th Cir.1979). In Mansbach, an investor filed suit against a securities broker-dealer for allegedly violating federal securities laws and corresponding state laws. Id. at 1019. The Sixth Circuit decided that if the district court upon remand determined that the federal claims contained substantially the same elements as the state law claims, the district court should consolidate the claims and not refer the state law claims to arbitration. Id. at 1030-31. In addition, prior to 1981, a number of district courts in the Second Circuit articulated their versions of the intertwining doctrine. See, e.g., Fox v. Merrill Lynch & Co., Inc., 453 F.Supp. 561, 567 (S.D.N.Y.1978) (if it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims); Shapiro v. Jaslow, 320 F.Supp. 598, 600 (S.D.N.Y.1970) (although the court has the power to compel arbitration of state securities and common law claims, under the circumstances there that procedure was impractical, if not impossible, since the court could not separate out the common law from the federal law issues).[2]
 
 
 25
 After 1981 and during the pendency of this action, federal courts continued to deny the right to arbitration based on the intertwining doctrine. In 1982, the Eleventh Circuit adopted the doctrine in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1172-73 (11th Cir.1982) and Belke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 693 F.2d 1023, 1026 (11th Cir.1982). In the same year, a district court in this circuit applied the doctrine to deny a motion to compel arbitration in Cunningham v. Dean Witter Reynolds, Inc., 550 F.Supp. 578, 585 (E.D.Cal.1982).[3]
 
 
 26
 In 1984, we held that the intertwining doctrine was applicable in this circuit in Byrd v. Dean Witter Reynolds, Inc., 726 F.2d 552, 554 (9th Cir.1984), rev'd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The Supreme Court reversed the judgment of this court and held that the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, notwithstanding the fact that the result would be the possibly inefficient maintenance of separate proceedings in different forums. Byrd, 105 S.Ct. at 1241.
 
 
 27
 Contrary to the Fishers' assertion that Becker's right to compel arbitration was clear, Becker has correctly suggested that it would have been futile for it to make a motion to compel arbitration at the outset of this litigation. As noted above, counsel for Becker examined the complaint filed by the Fishers and decided, based on our comment in De Lancie and the trend of federal authority, that a motion for arbitration would have been denied because the claims were not severable. An evaluation of existing case law on this subject from 1981 to 1985 would have indicated to any competent attorney that an agreement requiring arbitration of disputes involving securities law violations was not enforceable in this circuit until the Supreme Court's repudiation of the rule in 1985.
 
 
 28
 Because the intertwining doctrine would have precluded arbitration of the state law claims, the fact that Becker did not file its motion to compel arbitration until the Supreme Court's decision in Byrd was not inconsistent with the agreement to arbitrate disputes arising out of its contract with the Fishers. See Kershaw v. Dean Witter Reynolds, Inc., 734 F.2d 1327, 1329 (9th Cir.1984) (because the doctrine of intertwining would have precluded arbitration of state law claims, defendant's failure to assert the right to arbitration until a few days before trial was not inconsistent with that right). An earlier motion to compel arbitration would have been futile under these circumstances. See Belke, 693 F.2d at 1027 (a motion to compel arbitration of common law claims at the outset of the litigation, prior to dismissal of the federal claims, would have been futile due to the intertwining doctrine); see also Finn v. Davis, 610 F.Supp. 1079, 1081 n. 1 (S.D.Fla.1985) (prior to the Supreme Court's Byrd decision, a motion for arbitration of plaintiff's arbitrable claims would have been futile); cf. Kershaw, 734 F.2d at 1329 (because trial of all claims would have proceeded in federal court due to the intertwining doctrine, defendant's motion to compel arbitration a few days before trial was not untimely).
 
 
 29
 Until the Supreme Court's decision in Byrd, the arbitration agreement in this case was unenforceable. Therefore, the Fishers have failed to demonstrate that Becker acted inconsistently with a known existing right to compel arbitration.
 
 C. Prejudice to the Fishers
 
 30
 The Fishers contend that Becker's late assertion of its right to compel arbitration was prejudicial because they expended time, money, and effort on responding to pretrial motions and in preparing for trial and conducted extensive discovery of the arbitrable claims. We disagree.
 
 
 31
 The record does not support the Fishers' contention that they have been prejudiced by the extensive discovery undertaken by the parties in this case. The Fishers' claim under section 12(2) of the Securities Act of 1933 is nonarbitrable and will remain in federal court. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Any discovery conducted in relation to this claim will be available for the trial of the section 12(2) claim. The fact that the Fishers also engaged in discovery concerning the nonarbitrable claims does not constitute sufficient prejudice to establish waiver. See Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 642 (7th Cir.1981) (discovery on nonarbitrable federal securities claims is not sufficient to constitute a waiver of the right to arbitration).
 
 
 32
 Nor is waiver established by the fact that Becker failed to raise as an affirmative defense the agreement to arbitrate. Absent a showing of prejudice by the Fishers, the bare fact that Becker failed to raise an affirmative defense is inadequate by itself to support a claim of waiver of arbitration. Rush v. Oppenheimer & Co., 779 F.2d 885, 889 (2d Cir.1985).
 
 
 33
 Furthermore, the possibility that there may be some duplication from the parallel proceedings is not prejudicial to the Fishers. The Arbitration Act requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. Byrd, 105 S.Ct. at 1241. See also Moses H. Cone Memorial Hospital, 460 U.S. at 20, 103 S.Ct. at 939 ("the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement").
 
 
 34
 Finally, the Fishers make the surprising contention that they have been prejudiced because they "willingly incurred the substantial expense involved in this litigation in order to benefit from a full jury trial." Appellees' brief, page 21. This wound was self-inflicted. The Fishers were parties to an agreement making arbitration of disputes mandatory. They violated that agreement by including their arbitrable claims in this action. Any extra expense incurred as a result of the Fishers' deliberate choice of an improper forum, in contravention of their contract, cannot be charged to Becker.
 
 
 35
 The Fishers have failed to support their contention that Becker acted inconsistently with an existing right to compel arbitration. The Fishers have also failed to demonstrate any prejudice resulting from the alleged inconsistent acts. Therefore, the order of the district court denying Becker's Motion to Stay and to Compel Arbitration is reversed. The case is remanded to the district court with directions: (1) to determine whether any of the Fishers' claims are arbitrable; (2) to order that any arbitrable claims be submitted to arbitration immediately; and (3) to proceed to trial on the Fishers' nonarbitrable claims.
 
 
 36
 REVERSED and REMANDED.
 
 
 37
 WIGGINS, Circuit Judge, concurring.
 
 
 38
 I concur in the result reached by the panel.
 
 
 39
 A rule that leaves open the opportunity for a party to oust the district court of its authority to hear a case otherwise within its jurisdiction, after three and one-half years of pretrial preparation and on the eve of trial itself, is to say the least remarkable. We follow that rule today and accept the result it commands. But I do not choose to do so without registering a sense of disappointment.
 
 
 40
 The decision of the Supreme Court in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), was helpful. It put to rest the intertwining doctrine and will avoid future litigation over whether arbitrable and nonarbitrable claims are in fact intertwined. But Byrd will not avoid unseemly last minute forum shopping. Although Byrd establishes that non-Security Act claims are arbitrable even when joined with nonarbitrable Security Act claims, it does not resolve the issue of waiver. The right to arbitration remains waivable, and we may confidently expect future cases to raise the waiver issue in a variety of settings.
 
 
 41
 In my view, the interest of justice would be served if a bright line rule regarding cases such as this were declared. The rule should be, I believe, that waiver of arbitration will be found as a matter of law unless the party claiming arbitration asserts that right in his answer.
 
 
 42
 When a party to an agreement containing an enforceable arbitration clause files suit in the district court, contrary to the arbitration clause, it is clear that such party has made a choice of forum in favor of the district court and has offered to waive his right to arbitrate. Similarly, when the other party to such an agreement answers the complaint in district court and does not assert his contractual right to arbitration, it is evident that he accepts the choice of forum selected by his adversary. Both parties have agreed to a modification of their original agreement to arbitrate, and the law should not be reluctant to enforce it by finding waiver, as a matter of law, without regard to prejudice.
 
 
 43
 The salutory effect of such a bright line rule is evident to a system of rational justice and to litigants who invoke it. Had such a rule been in place before the filing of this action, the present appeal would not have been filed. Most likely the controversy between these parties would have been resolved in district court on the merits and the considerable time devoted to hearings and appeals on procedural motions avoided.
 
 
 44
 It is not accurate to assume that the present case raises circumstances not likely to recur in the wake of Byrd. Had Byrd preceded the filing of this lawsuit, the action might have followed much the same course. The district court action would have been necessary because the plaintiff alleges nonarbitrable Security Act violations. For tactical reasons, the plaintiff might have filed simultaneous pendent state claims in the district court which were subject to arbitration. The defendant might have answered, without asserting the arbitration clause. Three and one-half years later, on the eve of trial, the defendant, for tactical reasons, might choose to assert the arbitration clause and the issue would then be joined on waiver. The defendant might argue waiver to be inappropriate because no prejudice is shown to the plaintiff.
 
 
 45
 We should not condone such a scenario if it is within our power to avoid it. Unfortunately, it does not appear to be within the province of this panel to proclaim what I believe to be a common sense rule in view of the contrary precedents of our circuit which tilt in favor of arbitration and against waiver.
 
 
 46
 At the appropriate time, those precedents should be reexamined. Courts have declared their bias in favor of arbitration, and their resistance to waiver, for so long that the underpinnings of that proposition are seldom questioned. The Supreme Court in Byrd, however, dispelled much of the fog surrounding this "strong federal policy" in favor of arbitration. It found that the policy was one based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism. If what is at stake is the sanctity of a contract, I see no compelling reason why a contract to waive arbitration is not just as worthy of respect as a contract to compel arbitration. Properly considered in an appropriate case, those precedents standing in the way of waiver, based upon a failure to assert arbitration in an answer to a complaint, may be reviewed and found not to compel the result we reach today.
 
 
 
 [1]
 The complaint sets forth eight claims for relief: (1) violation of Rule 10b-5; (2) negligence; (3) breach of fiduciary duty; (4) fraud; (5) wanton and reckless disregard; (6) violation of section 12(2) of the Securities Act of 1933; (7) violation of section 30-1446 of the Idaho Securities Act; and (8) violation of section 15(c)(1) of the Securities Exchange Act of 1934
 
 
 [2]
 During this period, there were some federal courts that rejected the intertwining doctrine. See, e.g., Lee v. Ply*Gem Industries, Inc., 593 F.2d 1266, 1275 (D.C.Cir.), cert. denied, 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (in a proceeding involving antitrust and common law claims, the permeation doctrine provides no authority for a ruling that arbitrable claims become subject to adjudication in court merely because they are related to nonarbitrable claims); Dickinson v. Heinold Securities, Inc., 661 F.2d 638, 644 (7th Cir.1981) (the better solution in cases with factually and legally related arbitrable and nonarbitrable claims was to stay the arbitration proceeding pending resolution of the litigation)
 
 
 [3]
 Following 1981, not all federal courts accepted the intertwining doctrine. See, e.g., Surman v. Merrill Lynch, Pierce, Fenner & Smith, 733 F.2d 59, 62 (8th Cir.1984) (we agree with those courts rejecting the intertwining doctrine); Liskey v. Oppenheimer & Co., 717 F.2d 314, 320 (6th Cir.1983) (follows Dickinson v. Heinold Securities, Inc., 661 F.2d 638 (7th Cir.1981), in rejecting intertwining doctrine); Roueche v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 554 F.Supp. 338, 340 (D.Hawaii 1983) (intertwining doctrine would not be adopted where it would have the effect of nullifying an outstanding state court order staying state proceedings pending arbitration)