21 F.3d 1113
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeana HURST, Plaintiff-Appellee,
v.
PRUDENTIAL SECURITIES INCORPORATED, dba Prudential-Bache
Capital Funding; James Crowley, Defendants-Appellants.
 No. 93-15148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1993.
Decided April 4, 1994.
 
 Before: LAY,** THOMPSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Prudential Securities, Inc. ("Prudential Securities") and James Crowley ("Crowley") appeal from a judgment of the district court denying their petition to compel arbitration in an action brought by Jeana Hurst ("Hurst") alleging violations of Title VII, the Equal Pay Act, and RICO, and asserting state discrimination and contract claims. The district court found that Prudential Securities and Crowley had waived their right to compel arbitration, and additionally, that Title VII cases are not necessarily subject to arbitration. We reverse the judgment of the district court and remand with instructions that the district court order the parties to submit to arbitration.
 
 I.
 
 3
 Hurst was employed in the San Francisco office of Prudential Securities' Investment Banking Department, known as Prudential-Bache Capital Funding ("PBCF"), from May 1987 through December 1990. At the inception of her employment Hurst executed a Standard Uniform Securities Industry Registration Form ("Form U-4" or "U-4 Agreement") that contains an arbitration clause obligating her to arbitrate disputes between she and her employer.
 
 
 4
 On September 14, 1990, about three months before her termination from PBCF, Hurst filed a complaint in San Francisco Superior Court against PBCF, Crowley and other defendants no longer party to this action[1] alleging violations of RICO, conspiracy to violate RICO, and violations of Title VII, and asserting several state law discrimination and contract claims. On October 15, 1990, defendants removed the case to federal court. On December 21, 1990, PBCF and the individual defendants moved to dismiss certain of plaintiff's claims for failure to state a claim for which relief could be granted and moved to change venue to the Southern District of New York. On April 9, 1991, while these motions were pending, the parties filed their first joint status conference statement, in which all the parties, including both the accounting firm of Deloitte & Touche (a non-party to the U-4 agreement) and the president of Prudential Securities, George Ball, represented to the court, among other things: "The parties do not believe the case is suitable for reference to binding arbitration...." After a hearing on April 19, 1991, the district court, by order dated May 24, 1991: (i) dismissed the RICO and conspiracy to violate RICO claims; (ii) retained jurisdiction over the Title VII, Equal Pay Act and California Labor Code claims; and (iii) remanded to state court the remaining claims based on state law. Upon that remand, only PBCF and Crowley remained as defendants in the federal court action.
 
 
 5
 On July 2, 1991, after the district court's partial remand, which removed Deloitte & Touche from the federal court action, and after the Supreme Court rendered its decision in Gilmer v. Interstate/Johnson Lane Corp., 111 S.Ct. 1647 (1991), PBCF, Crowley and Hurst filed an Amended Joint Status Conference Statement. In that statement, the defendants asserted that "Defendants believe that this case may be referable to arbitration pursuant to the rules of the New York Stock Exchange, and that there has been no waiver of their right to petition for arbitration." Hurst asserted that the case was not suitable for arbitration and that defendants had waived any right to petition for arbitration. On July 19, 1991 PBCF and Crowley filed their Answer asserting arbitration as an affirmative defense.
 
 
 6
 On August 23, 1991, PBCF and Crowley filed a petition to compel arbitration in the Southern District of New York. By judgment dated February 11, 1992, the Southern District of New York court did not reach the merits of the petition, but suggested that it should be filed before the Northern District of California. On April 6, 1992, PBCF and Crowley filed a motion to compel arbitration in the Northern District of California. At oral argument on the motion, the district court, sua sponte, concluded that PBCF was not a signatory to the U-4 Agreement and could not compel arbitration, and that the signatory, Prudential Securities, was not a party to the action. The district court stated in its order that PBCF's motion to compel arbitration was denied "on the grounds that none of the defendants is a party to the Form U-4 agreement containing the arbitration clause, and that Prudential Securities, Inc., which is a party to the Form U-4 agreement, is not a defendant in this action." The district court rejected the argument that PBCF was merely a division of Prudential Securities and entitled to invoke the remedy of arbitration set forth in the U-4 Agreement.
 
 
 7
 PBCF and Crowley appealed and requested a stay pending appeal of the denial of the petition to compel. The district court denied that motion without prejudice to a motion to dismiss PBCF because PBCF was not a proper party. Hurst then requested permission to amend her complaint to name Prudential Securities as a defendant.
 
 
 8
 On November 3, 1992, pursuant to a Stipulation and Order re Amendment filed on October 29, 1992, Hurst filed her Second Amended Complaint in which PBCF was dropped as a party and Prudential Securities was first named as a party defendant. PBCF then withdrew its appeal. On November 16, 1992, Prudential Securities answered the complaint and asserted as an affirmative defense the existence of the agreement to arbitrate Hurst's claims. On November 20, 1992, Prudential Securities and Crowley filed their petition to compel arbitration.
 
 
 9
 By order dated January 4, 1993, the district court denied Prudential Securities and Crowley's petition to compel arbitration on the ground that Prudential Securities and Crowley had waived their right to compel arbitration "by the actions they undertook in the course of this litigation." By order dated February 19, 1993, ruling on the motion of Prudential Securities and Crowley for a stay pending appeal, the district court attempted to expand upon its reasons for refusing to compel arbitration, indicating that, "after further consideration, it appears that the just-quoted language [regarding the defendants' waiver] fails to set forth adequately the basis for the ruling." The district court suggested that the 1991 amendments to Title VII express a preference for the judicial forum, that compelling arbitration would result in delay of the resolution of Hurst's claims, and that defendants should have pursued their right to compel arbitration earlier in the proceedings: "(a) in July 1991 or August 1991; (b) before the undersigned judge, instead of the New York court; (c) by Prudential Securities and Crowley; and (d) after Prudential Securities had done what it only later did--get itself made defendant in place of [PBCF]." Hurst argues on appeal that the 1991 Civil Rights Act precludes involuntary arbitration of Title VII claims, that Sec. 1 of the Federal Arbitration Act ("FAA") precludes compulsory arbitration of employment contracts involved in interstate commerce, and that, even if these arguments are rejected, Prudential Securities waived its right to compel arbitration.
 
 II.
 
 10
 The denial of a petition to compel arbitration is subject to de novo review by an appellate court. Mago v. Shearson Lehman Hutton Inc., 956 F.2d 932, 934 (9th Cir.1992). We have jurisdiction under the FAA, 9 U.S.C. Sec. 16.
 
 
 11
 We quickly dispose of Hurst's first two arguments. In Gilmer v. Interstate/Johnson Lane Corp., 111 S.Ct. 1647 (1991), the Supreme Court established the arbitrability of discrimination claims. In Gilmer, the Court held that a NYSE registered representative who had executed a Form U-4 was required to arbitrate his ADEA claim under the FAA. After noting the " 'liberal federal policy favoring arbitration agreements,' " id. at 1651 (citation omitted), the Court stated that " '[h]aving made the bargain to arbitrate, the parties should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' " Id. at 1652 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). In this regard, the Court noted, "the burden is on [the party opposing arbitration] to show that Congress intended to preclude a waiver of a judicial forum for [statutory] claims." Id. The Court concluded that no showing had been made "that Congress, in enacting the ADEA, intended to preclude arbitration of claims under the Act." Id. at 1657.
 
 
 12
 This circuit addressed the issue of the arbitrability of Title VII claims in Mago v. Shearson Lehman Hutton Inc., 956 F.2d 932 (9th Cir.1992), which held that a district court erred in denying a motion to compel arbitration of a plaintiff's sexual harassment and gender discrimination claims. In Mago, the court noted:
 
 
 13
 Although Gilmer involved a claim under the [ADEA], rather than the Title VII claim brought by Mago, both statutes are similar in their aims and substantive provisions. Therefore, we conclude that Mago has not met her burden of showing that Congress, in enacting Title VII, intended to preclude arbitration of claims under the Act.
 
 
 14
 Id. at 935 (citations omitted). Other circuits have reached the same conclusion. E.g., Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700-01 (11th Cir.1992) (compelling arbitration of Title VII gender discrimination claims); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305 (6th Cir.1991) (same); Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir.1991) (reversing its pre-Gilmer decision denying motion to stay and compel arbitration).
 
 
 15
 We conclude that Hurst's argument that the Civil Rights Act of 1991 precludes arbitration of Title VII claims is without merit.[2]
 
 
 16
 Hurst also raises the antecedent issue of whether the FAA extends at all to arbitration clauses contained in employment contracts. Faced with this exact issue in Gilmer, the Supreme Court held that the exclusionary clause for contracts of employment in Sec. 1 did not apply to Gilmer's arbitration agreement contained in his Form U-4. See Gilmer, 111 S.Ct. at 1651 n. 2. The present facts are indistinguishable from those in Gilmer, and consequently we reject Hurst's claim. See also Willis, 948 F.2d at 310-12 (rejecting same argument). We thus find that, absent a waiver by Prudential Securities of its right to compel arbitration, Hurst's claims should have been submitted to arbitration.
 
 
 17
 The district court held that Prudential Securities and Crowley waived their right to compel arbitration "by the actions they undertook in the course of this litigation." A party asserting waiver bears a heavy burden to demonstrate that the right to arbitrate has been waived. E.g., Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir.1986); Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir.1985); Lake Communications, Inc. v. ICC Corp., 738 F.2d 1473, 1477 (9th Cir.1984). Once it is determined that the parties to a contract have created an enforceable arbitration clause, then the policies inherent in the FAA dictate that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 831 (2d Cir.1988). To prevail, Hurst must demonstrate (1) Prudential Securities and Crowley were aware of the right to arbitrate; (2) Prudential Securities and Crowley acted inconsistently with their right to arbitrate; and (3) Hurst was prejudiced as a result of their inconsistent acts. Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir.1990); Fisher, 791 F.2d at 694.
 
 
 18
 We find that Prudential Securities and Crowley did not act inconsistently with their right to arbitrate, and consequently that the case should be submitted to arbitration. This conclusion may be supported on either of two bases. First, the district court found that Prudential Securities and PBCF are separate entities for purposes of invoking Prudential Securities' right to compel arbitration. Consequently, PBCF could not have waived Prudential Securities' right to compel arbitration, and Prudential Securities has consistently pursued its right to compel arbitration. Second, even if Prudential Securities and PBCF are considered the same entity, they have not acted inconsistently with their right to arbitrate.
 
 
 19
 A. Prudential Securities and PBCF As Separate Entities
 
 
 20
 Prudential Securities did not become a party to this action until November 3, 1992, after the district court stated that PBCF, formerly the named defendant, could not invoke the arbitration procedure contained in the U-4 Agreement signed by Hurst because PBCF was not a signatory to that agreement. Since that time, Prudential Securities, as the "proper party," has only engaged in efforts to compel arbitration.[3]
 
 
 21
 The first Joint Status Conference Statement was filed by PBCF, not by non-party Prudential Securities. In light of the district court's finding that PBCF was not a party to the U-4 Agreement, and thus could not invoke the agreement to compel arbitration, it would be logically inconsistent to find that PBCF could have waived Prudential Securities' right to compel arbitration. Since being substituted as a party, Prudential Securities' entire course of action has consisted of filing an Answer asserting arbitration as an affirmative defense and filing a Petition to compel arbitration. Since becoming a party to the action, Prudential Securities has acted consistently with its right to arbitrate and consequently Hurst has not carried her burden of showing waiver.
 
 
 22
 B. Prudential Securities and PBCF as the Same Entity
 
 
 23
 Even if PBCF and Prudential Securities are considered to be the same entity, PBCF did not waive its (or Prudential Securities') right to compel arbitration. Limited discovery does not constitute waiver of a right to compel arbitration. See Britton, 916 F.2d at 1413 (no waiver of arbitration found despite the fact that parties engaged in discovery activity and motion practice over a period of two years); Fisher, 791 F.2d at 697 (court disagreed with contention that non-moving party was prejudiced because time, money and effort had been expended in responding to pretrial motions, conducting extensive discovery, and preparing for trial); see also Rush, 779 F.2d at 887-88 (expense, delay, participation in discovery, moving to dismiss complaint and failing to raise arbitration as an affirmative defense does not support a finding of waiver).
 
 
 24
 Hurst and the district court both noted that PBCF's act of filing the Joint Status Conference Statement on April 9, 1991, in which it represented to the court that Hurst's claims were not arbitrable, indicates a waiver of PBCF's right to compel arbitration. This argument ignores the fact that the first Joint Status Conference statement was quickly amended. On July 2, 1991, PBCF filed its Amended Status Conference Statement indicating PBCF's belief that arbitration was appropriate. Additionally, the April 9, 1991 Status Conference Statement was filed prior to the district court's ruling on PBCF's Motion to Dismiss. The motion to dismiss resulted in the remand of most of Hurst's claims to state court and the retention of only a few of her claims in the federal district court. It is clear that once the scope of the case was known, and Deloitte & Touche (a non-party to the U-4 Agreement) was dropped from the federal action, PBCF consistently sought to compel arbitration. Finally, the Gilmer decision was not rendered until May 13, 1991, between PBCF's original status conference statement and its amended status conference statement. While perhaps foreseeable, it was not clear until that case was decided that all of Hurst's claims could be decided in arbitration. PBCF first petitioned to compel arbitration, in August 1991, in the Southern District of New York, three months after Gilmer was decided. See Benoay v. Prudential-Bache Sec., Inc., 805 F.2d 1437, 1440 (11th Cir.1986) (delay in moving for arbitration did not constitute waiver where motion to compel arbitration was filed 10 weeks after right to arbitrate accrued and 2 1/2 years after commencement of case).
 
 
 25
 While "the litigation of substantial issues going to the merits may constitute a waiver of arbitration," see McDonnell Douglas Finance, 858 F.2d at 833 (citation omitted), such is not the case here. Prudential Securities engaged in only the limited form of discovery that courts have found insufficient to overcome the heavy burden a party opposing arbitration bears. In light of the strong federal policy favoring arbitration, we find that neither PBCF nor Prudential Securities acted inconsistently with the right to compel arbitration.
 
 
 26
 Finally, we do not find that Hurst has been substantially prejudiced. Hurst's claim of prejudice is essentially one of the expenses she has incurred in litigating the case, and the delay occasioned by postponing the trial date. As we noted in Britton, however, spending time and resources in discovery is unavailing to show prejudice if it is the plaintiff who refuses to arbitrate. 916 F.2d at 1413. Hurst conceded at her deposition that she rejected an early demand for arbitration because she wanted to engage in discovery. The record indicates that it has been Hurst who has been most active in litigating the case. Having taken and demanded discovery, Hurst may not now contend that she was prejudiced by related fees necessarily incurred, particularly when such costs would have been incurred in the pursuit of the arbitration anyway. Any prejudice Hurst has endured is not sufficiently grave to meet her heavy burden of showing waiver. See Rush, 779 F.2d at 889; Fisher, 791 F.2d at 698.
 
 III.
 
 27
 The judgment of the district court is reversed, and the case is remanded with directions to grant Prudential Securities' petition to compel arbitration.
 
 
 
 *
 Hon. Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The other defendants were George Ball and Frank Russo, former Prudential Securities employees sued in their capacity as agents of Prudential Securities, the accounting firm of Deloitte & Touche, and other non-Prudential Securities defendants. As will be discussed, these defendants are no longer party to the federal court action that is the subject of this appeal
 
 
 [2]
 Hurst's citation to the legislative history of Title VII, by which she attempts to distinguish Gilmer and Mago, is unavailing. The plain text of Sec. 118 of the Civil Rights Act of 1991 explicitly encourages the use of alternative means of dispute resolution. While the interpretive memoranda and reports to which Hurst cites lend some support to the notion that some members of Congress disapproved of, or did not wish to extend, the Supreme Court's decision in Gilmer, Hurst's argument that Congress intended to preclude compulsory arbitration of Title VII claims under the FAA is ultimately unpersuasive. We find that the inclusion of Sec. 118 in the Act, combined with the absence of any limiting language regarding the holding in Gilmer and an ambiguous legislative history, strongly suggests that Congress intended Title VII claims to be subject to compulsory arbitration
 Moreover, Hurst does not assert that she was fraudulently induced into signing the U-4 Agreement, or that any other basis exists for the revocation of the U-4 Agreement. See Gilmer, 111 S.Ct. at 1656 (indicating that arbitration agreements are enforceable " 'save upon such grounds as exist at law or in equity for the revocation of any contract' " (citation omitted)). Hurst's argument that she did not knowingly and voluntarily agree to arbitrate future Title VII claims because the arbitration clause is ambiguous, is in small print, and is a condition of employment lacks merit. Courts have repeatedly found the Form U-4 to constitute a valid and enforceable agreement to arbitrate. E.g., Bender, 971 F.2d at 700 (sex discrimination claim under Title VII subject to compulsory arbitration under FAA where employee had executed Form U-4 containing arbitration agreement); Willis, 948 F.2d at 306 (securities representative's sex discrimination claims subject to arbitration pursuant to securities registration form she was required to execute).
 
 
 [3]
 Following filing of the Stipulation and Order and Second Amended Complaint, on October 29 and November 3, 1992, respectively, which made Prudential Securities a party to the action, Prudential Securities filed an answer asserting arbitration as an affirmative defense on November 16, 1992, and petitioned the district court to compel arbitration of Hurst's claims on November 20, 1992