Jean HURST, Plaintiff,

v.

**PRUDENTIAL SECURITIES INCORPORATED, dba Prudential Bache Capital Funding; James Crowley, Defendants.**

No. C–90–2930 WHO.

United States District Court,
N.D. California.

July 10, 1995.

Co., 850 F.2d 350, 352 (8th Cir.1988); *Bank of St. Louis v. Morrissey*, 597 F.2d 1131, 1134–35 (8th Cir.1979).

Ellen Lake, Ellen Lake Law Offices, Oakland, CA, Deborah C. England, Law Offices of Deborah C. England, San Francisco, CA, Kathleen M. Lucas, Lucas Law Firm, San Francisco, CA, for plaintiff.

Benjamin P. Klatsky, Robert A. Dolinko, Robert J. Perry, Elizabeth L. Hirsch, Ronald M. Green, Epstein, Becker & Green, San Francisco, CA, for defendants Prudential–Bache Capital Funding and James Crowley.

## OPINION AND ORDER

ORRICK, District Judge.

Plaintiff's motion to dissolve the stay of the case pending arbitration and to restore the case to the Court's trial calendar and defendants' motion to compel compliance with court orders directing plaintiff to arbitrate her claims pursuant to the rules of the New York Stock Exchange and to stay plaintiff from arbitrating before the National Association of Securities Dealers having come before the Court, and the Court, having considered the pleadings and having had the benefit of oral argument of counsel, for the reasons stated by the Court at the hearing and for the reasons stated below, grants plaintiff's motion and denies defendants' motion.

### I. FACTUAL BACKGROUND.

A detailed discussion of the factual background of this case can be found in the Ninth Circuit's unpublished Memorandum. *Hurst v. Prudential Sec., Inc.*, No. 93–15148, slip op., 1994 WL 118097 (9th Cir. Apr. 4, 1994). Plaintiff, Jean Hurst ("Hurst"), was employed in the San Francisco office of Prudential Securities Incorporated's ("Prudential") Investment Banking Department, known as Prudential–Bache Capital Funding ("PBCF"), from May 1987 through December 1990. At the inception of her employment Hurst executed a Standard Uniform Securities Industry Registration Form ("Form U–4" or "U–4 Agreement") that contains an arbitration clause obligating her to arbitrate disputes between her and her employer. (*See* Hurst Decl., filed Mar. 29, 1995, Ex. A.)

On September 14, 1990, Hurst filed a complaint in the Superior Court for the City and County of San Francisco against PBCF, James Crowley ("Crowley"), and other defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., conspiracy to violate RICO, and violations of 42 U.S.C. § 2000e et seq. ("Title VII"), unlawful discrimination based on sex, and asserting several state law discrimination and contract claims. Defendants removed the case to fed-

eral court, moved to dismiss certain of Hurst's claims for failure to state a claim for which relief could be granted, and moved to change venue to the Southern District of New York.

This Court, by Order filed May 24, 1991, dismissed the RICO and conspiracy to violate RICO claims, retained jurisdiction over Title VII, Equal Pay Act, and California Labor Code claims, and remanded to state court the remaining claims based on state law. Upon that remand, only PBCF and Crowley remained as defendants in this action.

After the Supreme Court rendered its decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).[1] PBCF and Crowley informed this Court that they "believe[d] that this case may be referable to arbitration pursuant to the rules of the New York Stock Exchange, and that there has been no waiver of their right to petition for arbitration." (Am. Joint Status Conference Statement, filed July 8, 1991, at 4:6–9.) Hurst claimed that the case was not suitable for arbitration and that defendants had waived any right to petition for arbitration. On July 19, 1991, PBCF and Crowley filed their answer, asserting arbitration as an affirmative defense.

On November 3, 1992, pursuant to a Stipulation and Order re Amendment filed on October 29, 1992, Hurst filed her second amended complaint in which PBCF was dropped as a defendant and Prudential was first named as a defendant. On November 16, 1992, Prudential answered the complaint and asserted as an affirmative defense the existence of the agreement to arbitrate Hurst's claims. On November 20, 1992, Prudential and Crowley filed their petition to compel arbitration.

This Court denied defendants' petition to compel arbitration on the ground that they had waived their right to compel arbitration "by the actions they undertook in the course of this litigation." (Order filed Jan. 4, 1993, at 2:4.) On appeal, the Ninth Circuit reversed this Court and ordered the parties to go to arbitration. This Court then granted the petition to compel arbitration, required Hurst, Prudential, and Crowley to submit to arbitration all of the second amended complaint's claims and any other pending claims, and stayed, pending such arbitration, the action at bar and any San Francisco Superior Court proceeding in which one or more remanded claims are pending.

Hurst now moves this Court to dissolve the stay and restore the case to the trial calendar, based on a recent Ninth Circuit decision that she argues precludes compulsory arbitration of her Title VII and related discrimination claims. *Prudential Ins. Co. v. Lai,* 42 F.3d 1299 (9th Cir.1994). Hurst claims that pursuant to an established exception to the "law of the case" doctrine, this Court has discretion to revisit a previously decided issue where the controlling law has changed.

First, defendants oppose Hurst's motion arguing that the motion is procedurally inappropriate and untimely. Second, they argue that the decision in *Lai* creates no exception to the application of the law of the case doctrine in this action. Defendants move the Court to compel compliance with the Court's Orders directing Hurst to arbitrate her claims pursuant to the rules of the New York Stock Exchange ("NYSE") and to stay Hurst from arbitrating before the National Association of Securities Dealers ("NASD").

## II. *HURST'S MOTION TO DISSOLVE STAY AND RESTORE CASE TO TRIAL CALENDAR.*

### A. *Law of the Case Doctrine.*

 The doctrine of law of the case states that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.1993) (citing *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 715 (9th Cir.1990).) There are, however, a few narrow exceptions to the law of the case doctrine:

---

1. In *Gilmer,* the Supreme Court held that individuals in Age Discrimination in Employment Act cases may contractually agree to arbitrate employment disputes and thereby waive statuto-

ry rights to which they would otherwise be entitled. *Gilmer* was extended to Title VII cases by the Ninth Circuit in *Mago v. Shearson Lehman Hutton Inc.,* 956 F.2d 932 (9th Cir.1992).

Depending on the nature of the case or issue and on the level or levels of the court or courts involved, a court may have discretion to reopen a previously resolved question under one or more of the following circumstances:

(1) the first decision was clearly erroneous;

(2) an intervening change in the law has occurred;

(3) the evidence on remand is substantially different;

(4) other changed circumstances exist;

(5) a manifest injustice would otherwise result.

*Id.* at 155 (citations omitted). Hurst argues that the published opinion in *Lai* constitutes an "intervening change in the law" that is an exception to the "law of the case doctrine." *Id.* at 155.

The Ninth Circuit Federal Rules of Appellate Procedure state that a "reasoned disposition" is designated an "opinion" (and therefore published) only if it (a) establishes, alters, modifies or clarifies a rule of law, or (b) calls attention to a rule of law which appears to have been generally overlooked, or (c) criticizes existing law, or (d) involves a legal or factual issue of unique interest or substantial public importance, or (e) is a disposition of a case in which there is a published opinion by a lower court or administrative agency, unless the panel determines that publication is unnecessary for clarifying the panel's disposition of the case, or (f) is a disposition of a case following a reversal or remand by the United States Supreme Court, or (g) is accompanied by a separate concurring or dissenting expression, and the author of such separate expression requests publication of the disposition of the Court and the separate expression. Fed.R.App.P. 36–2 (9th Cir.1995). An unpublished disposition, such as the Ninth Circuit's Memorandum in *Hurst,* is not to be regarded as precedent and should not be cited by the circuit court or any district court of the Ninth Circuit, either in briefs, oral argument, opinion, memoranda, or orders, *except* "when relevant under the doctrines of law of the case, res judicata, or collateral estoppel." Fed.R.App.P. 36–3 (9th Cir.1995).

### B. *The Ninth Circuit's Unpublished Memorandum in Hurst.*

The Ninth Circuit issued an unpublished Memorandum reversing this Court and instructing it to order the parties to submit to arbitration. *Hurst,* No. 93–15148, slip op. at 14–15 (9th Cir. Apr. 4, 1994). Hurst's main arguments on appeal were that (1) the 1991 Civil Rights Act precludes involuntary arbitration of Title VII claims, (2) § 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 (1970), precludes compulsory arbitration of employment contracts involved in interstate commerce and, in the alternative, (3) defendants waived their right to compel arbitration.

The Ninth Circuit disposed of Hurst's first argument by stating that *Gilmer* established the arbitrability of discrimination claims. 500 U.S. at 35, 111 S.Ct. at 1656–57. The court cited *Mago v. Shearson Lehman Hutton, Inc.,* which held that a district court erred in denying a motion to compel arbitration of a plaintiff's sexual harassment and gender discrimination claims. 956 F.2d 932, 935 (9th Cir.1992). In a footnote the court found no merit in Hurst's argument that she did not knowingly and voluntarily agree to arbitrate future Title VII claims because the arbitration clause is ambiguous, is in small print, and is a condition of employment. The Ninth Circuit added that courts "have repeatedly found the Form U–4 to constitute a valid and enforceable agreement to arbitrate." (Mem. at 8 n. 2.)

The Ninth Circuit found that this case was indistinguishable from *Gilmer,* where the Supreme Court held that the exclusionary clause for contracts of employment in § 1 of the FAA did not apply to Gilmer's arbitration agreement contained in his Form U–4. 500 U.S. at 25 n. 2. It found that absent a waiver by Prudential of its right to compel arbitration, Hurst's claims should have been submitted to arbitration. Finally, the Ninth Circuit rejected Hurst's waiver argument finding that defendants did not act inconsistently with their right to arbitrate, and consequently that the case should be submitted to arbitration.

### C. *The Ninth Circuit's Opinion in Lai.*

▇▇ Hurst argues that a Ninth Circuit published Opinion, decided on December 20, 1994, constitutes a change in the controlling law that allows this Court to revisit a previously decided decision. In *Prudential Insurance Co. of America v. Lai*, 42 F.3d 1299 (9th Cir.1994), the appellants filed their claims in state court alleging that while employed by Prudential Insurance in 1989 and 1990, they were victims of sexual discrimination and abuse by their supervisor. Prudential Insurance filed an independent action in federal court to compel arbitration. The district court entered an order compelling arbitration and staying the state court proceedings, based upon the arbitration clause incorporated into the U–4 Forms that appellants signed. *Id.* at 1301. The Ninth Circuit reversed and held that the appellants did not "knowingly" enter into any agreement to arbitrate employment disputes.

The employees stated that when they signed the U–4 Forms, they were told only that they were applying to take a test that was required for their employment by Prudential Insurance, and that they were simply directed to sign in the relevant place without being given an opportunity to read the forms. *Id.* They said they were never given a copy of the NASD Manual, which contained the actual terms of the arbitration agreement. *Id.*

As in the Ninth Circuit Memorandum in *Hurst*, the Ninth Circuit in *Lai* states that *Gilmer* "made it clear that the ADEA does not bar agreements to arbitrate federal age discrimination in employment claims" and that "[o]ur circuit has extended *Gilmer* to employment discrimination claims brought under Title VII." *Lai*, 42 F.3d at 1303 (citing *Mago*, 956 F.2d 932). The Ninth Circuit went on to note that:

> The issues before us, however, is not whether employees may ever agree to arbitrate statutory employment claims; they

can. The issue here is whether these particular employees entered into such a binding arbitration agreement, thereby waiving statutory court remedies otherwise available.

*Id.* at 1303. It then reached the following conclusion:

> Appellants contend in effect that even after the Supreme Court's decision in *Gilmer*, employees cannot be bound by an agreement to arbitrate employment discrimination claims unless they knowingly agreed to arbitrate such claims. We agree with appellants that Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes. Such congressional intent, which has been noted in other judicial decisions, is apparent from the text and legislative history of Title VII.

*Id.* at 1304. The Ninth Circuit reasoned that even if the employees had known of the nature of the U–4 Form, they could not have understood that when they signed it, they were agreeing to arbitrate sexual discrimination suits because the U–4 Form does not purport to describe the types of disputes that were to be subject to arbitration. *Id.* at 1305. The court went even further finding that even if the employees had signed a contract containing the NASD arbitration clause, it would not put them on notice that they were bound to arbitrate Title VII claims because that provision did not refer to employment disputes. *Id.*[2]

▇▇ Rule 60(b) of the Federal Rules of Civil Procedure provides that on motion the court may relieve a party from a final judgment, order or proceeding for several reasons, including newly discovered evidence that by due diligence could not have been

---

2. Judge Norris wrote a concurrence in the *Lai* case regarding the majority's holding that the participating employees did not knowingly waive their right to trial:

> I am concerned, however, that the majority engages in appellate fact-finding by holding that these particular employees did not know-

ingly waive their trial rights, even though the district court never made a finding on the issue. The question of a knowing waiver of rights is so highly fact-sensitive that it should rarely, if ever, be decided in the first instance by an appellate court.

42 F.3d at 1306 (Norris, J. concurring).

discovered in time to move for a new trial under Rule 59(b), or a prior judgment upon which it is based is no longer equitable, or any other reason justifying relief from the operation of a judgment. A motion under Rule 60(b) must be made within a reasonable time. For relief due to mistake, newly discovered evidence or fraud, the motion cannot be made more than one year after the judgment.

On June 3, 1994, this Court (1) granted the petition to compel arbitration, (2) required Hurst, Prudential and Crowley to submit to arbitration all of the second amended complaint's claims, all pending remanded claims, and any other claims pending in any San Francisco Superior Court proceeding in which one or more remanded claims are pending; and (3) stayed, pending such arbitration, the action at bar and any San Francisco Superior Court proceeding in which one or more remanded claims are pending. It is appropriate for the Court to hear this motion under Rule 60(b) because the *Lai* case constitutes a change in the law that might justify relief from the operation of the judgment, and Hurst has made the motion within a reasonable time.[3]

### D. *Application of the Law of the Case Doctrine.*

■ Hurst argues that following the law of the case here would amount to a rejection of the controlling authority of the Ninth Circuit. She argued before the Ninth Circuit that "plaintiff did not voluntarily and knowingly agree to arbitrate future Title VII claims by signing a required pre-employment applica-

tion form, which contained an ambiguous arbitration clause." (Appellee's Br. at 16; Schwartz Decl., filed Mar. 29, 1995, at Ex. F).[4]

Defendants argue that *Lai* is a factually distinguishable decision by one panel of the Ninth Circuit that does not control the decision by another panel of the same circuit in this case. They state that appellate panels within the same circuit are of equal authority and one appellate panel does not control the decisions of another. Defendants reject Hurst's assertion that *Lai* should be considered controlling authority because it is published and *Hurst* is not. They also argue that under the doctrine of *stare decisis,* a panel of the court of appeals may not overrule circuit precedent as determined in a separate, prior action. Circuit decisions are *stare decisis* unless they are overruled by the court *en banc* or come into conflict with a subsequent decision to which it owes obedience, such as a decision by the Supreme Court. *Spinelli v. Gaughan,* 12 F.3d 853, 855 (9th Cir.1993) (panel of Court of Appeals cannot overrule Ninth Circuit precedent, but it can reconsider past cases in light of intervening Supreme Court decision); *Atonio v. Wards Cove Packing Co.,* 810 F.2d 1477, 1478–79 (9th Cir.1987) (appropriate mechanism for resolving irreconcilable conflict between holdings of controlling prior decisions of circuit court is *en banc* decision).

In the alternative, defendants argue that even if *Lai* were "controlling" authority, the decision does not constitute a "change" in controlling authority because it is distin-

---

**3.** This Court's initial concern that Hurst may have been stalling the progress of arbitration during the year since it was ordered, perhaps waiting for a favorable case to appear, was put to rest at the hearing on this motion. At the hearing, the parties agreed that the arbitral process before the NYSE takes a number of months to commence. The Court is now satisfied that this motion was made within a "reasonable" time in accordance with Rule 60(b).

**4.** Although Hurst did raise the "knowing" issue on appeal, at oral argument before this Court on this motion, counsel for Hurst admitted that they never raised the issue with the district court before the appeal. The Ninth Circuit did not mention that the argument was first brought on appeal.

Generally, appellate courts do not consider issues raised for the first time on appeal. *See Bolker v. Commissioner,* 760 F.2d 1039, 1042 (9th Cir.1985). There are some exceptions to this rule, such as to prevent the miscarriage of justice, when a new issue arises while an appeal is pending because of a change in the law, or when the issue raised is purely one of law and either does not depend on the factual record or the pertinent record has been fully developed. *Id.* at 1042. Although this Court questions the Ninth Circuit's decision to address a largely factual issue mentioned for the first time in an appellate brief, this Court is bound by that decision and cannot ignore the argument now.

guishable on its facts. They concede that both *Lai* and *Hurst* involve plaintiffs who were registered securities representatives and that both plaintiffs executed standard U–4 Agreements requiring them to arbitrate "any dispute, claim or controversy" arising between them and their employers that was "required to be arbitrated under the rules, constitutions or by-laws of the organizations with which [they] register[ed]." (Schwartz Decl., Ex. B, ¶ 5.)

Defendants point out that unlike the Ninth Circuit panel in *Hurst,* the panel in *Lai* held that plaintiffs were not precluded from pursuing their employment claims in court. They also state that the *Lai* panel based this determination on a finding that plaintiffs had not knowingly agreed to submit their employment disputes to arbitration in executing the U–4 Agreements. *Lai,* 42 F.3d at 1305. Defendants point out that in *Lai,* the employer allegedly misrepresented the terms of the U–4 Agreement by telling the employees they were simply "applying to take a test" and were not given an opportunity to read the agreement. *Id.* at 1301. They also argue that the U–4 Agreement in *Lai* sought to bind plaintiffs to arbitration under the NASD rules, which the court found did not require arbitration of employee disputes.

These points of distinction do not clearly distinguish *Lai* from the case at bar. The differences cited by defendants merely go to the results reached by the two Ninth Circuit panels, not the underlying facts. Judge Schroeder's statement that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration" is clear. *Id.* at 1305. This Court disagrees with defendants' interpretation of the law of the case doctrine. This case represents an exception to the doctrine because there has been an intervening change in the law. The *Lai* case is a published Opinion that altered or called attention to a rule of law concerning the necessity that employees understand that U–4 Forms compel arbitration. This type of intervening change in the law constitutes an exception to the law of the case doctrine.

Although it appears that the Ninth Circuit did not rely on the "knowing" issue in its decision to reverse this Court in *Hurst,* if the Ninth Circuit had been able to read the opinion in *Lai,* it most certainly would have at least remanded the case for further findings on whether Hurst knew she was agreeing to submit any disputes to arbitration. The Ninth Circuit made no attempt to analyze whether Hurst actually did not understand what she signed. No doubt further discovery on this issue and a possible summary judgment motion will be required.

Because this Court grants Hurst's motion to dissolve the stay and restores the case to the trial calendar, defendants' motion to compel compliance with this Court's orders regarding arbitration is moot and the merits of that motion need not be addressed.

## III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiffs' motion to dissolve the stay and restore this case to the Court's trial calendar is GRANTED.

2. Defendants' motion to compel compliance with court orders directing plaintiff to arbitrate her claims pursuant to the rules of the New York Stock Exchange is DENIED.

3. A status conference on this matter shall be held on Thursday, August 17, 1995, at 2:00 p.m., at which the Court will set the case for trial.